[Crim. No. 6173. In Bank. Apr. 10, 1958.]

THE PEOPLE, Respondent, v. NATHAN HARRIS SNYDER,* Appellant.

*Reporter's Note: This case was previously entitled "People v. Bonelli."

Joseph A. Ball, Walter Ely, Ward Sullivan, Abraham Gorenfeld and Marshall Ross for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, James Don Keller, District Attorney (San Diego), and Jack R. Levitt, Deputy District Attorney, for Respondent.

McCOMB, J.—Defendant appeals from judgments after trial before a jury finding him guilty of:

(a) Two counts of conspiracy,

(i) to receive money from liquor licensees for use in the campaign of William G. Bonelli for reelection to the Board of Equalization, in violation of section 5002.5 of the Elections Code, and

(ii) to give money for the same purpose, in violation of section 5002.6 of the Elections Code, and

(b) Two counts of perjury in having stated to the grand jury in 1954 and 1955 that he did not spend money on behalf of Bonelli.

The record discloses that defendant was secretary of the National Democratic Club of California; that the only records of the club were a bank book and deposit slips; that defendant was the only person authorized to withdraw funds from the club's bank account; and that funds collected from liquor licensees by others than defendant were received by him and were spent through the club for Bonelli's expenses in his 1946 and 1950 campaigns.

In 1954 defendant received checks collected by others from liquor licensees and spent them through the club for candidates other than Bonelli.

Because of the conclusions we have reached on other issues, it is unnecessary for us to determine whether on the evidence it can be inferred that defendant was a party to a conspiracy, within three years before the finding of the indictment, to spend funds for Bonelli's campaign in 1954.

██ Defendant contends: *First*: *That the 1955 grand jury which returned the conspiracy indictment against him had no authority to act as a grand jury.*

This contention is devoid of merit. It is predicated upon the fact that when the 1956 grand jury was impaneled on February 6, 1956, the 1955 grand jury was no longer an official body.

The facts are that on February 6, 1956, the 1955 grand jury presented its final report. The superior court accepted the report but ordered the grand jury to remain operative until March 5, 1956. The 1956 grand jury was impaneled on February 6, 1956, but the court ordered that the oath should not be administered until the tenure of the 1955 grand jury ended. On March 21, 1956, the 1955 grand jury returned the conspiracy indictment here involved and was dismissed. Thereafter the 1956 grand jurors were administered the oath of office.

It is thus apparent that since the 1956 grand jury was not sworn in until after the return of the indictment herein, and the minutes of the superior court indicate that it was the intent of the court that the 1955 grand jury was to remain operative until the return of the indictment, the 1955 grand jury had not ceased to be an official body at the time it returned the indictment.

*Halsey* v. *Superior Court*, 152 Cal. 71, 74 [91 P. 987], wherein it is said, "When in obedience to this mandate [Code Civ. Proc., § 241: "In all counties there shall be at least one grand jury drawn and impaneled in each year."] a new grand jury is impaneled, the life of the former grand jury must necessarily end" had nothing to do with the problem here presented. In the cited case the essential holding is the rejection of the contention that the county clerk's depositing the names of prospective grand jurors in the grand jury box automatically discharged the existing grand jury.

■ *Second: That the trial court erred in refusing to receive certain evidence which would have tended to prove that defendant had not made false statements to the 1954 and 1955 grand juries relative to the expenditure of money on behalf of Bonelli's election campaign by (a) the National Democratic Club and (b) defendant.*

This contention is correct. Defendant was charged with two counts of perjury. The first count charged that he had falsely stated before the 1954 San Diego Grand Jury that there were no expenditures by the National Democratic Club on behalf of Bonelli's election campaign. The second count charged that defendant had falsely stated before the 1955 grand jury that he had not spent money directly for Bonelli.

The evidence submitted to support the charge of the falsity of these statements was identical. The prosecution asserted that defendant stated before the San Diego Grand Juries he had never spent money on behalf of Bonelli's election cam-

paigns, when in fact he had spent money for Bonelli in his election campaign in 1950. To support the charges against defendant, the prosecution introduced in evidence portions of his testimony before the grand juries.

Defendant contended that when he denied spending money for Bonelli, he was referring only to the 1954 election and not to the 1950 election. As evidence to prove this fact, he offered certain statements which had been made by him before the grand juries but were not included in the portions of his testimony introduced in evidence by the prosecution (including an admission that he had spent money on behalf of Bonelli in 1950), together with proof that all the checks referred to in such statements were drawn in 1954 and that the deputy district attorney of San Diego (Barton Sheela) who had questioned defendant before the 1954 grand jury held in his hands and showed defendant during the questioning the 1954 checks of the National Democratic Club.

Defendant sought by two methods to introduce such other portions of his testimony before the grand juries, but in each instance the trial court sustained objections to the introduction of the proffered evidence. First, defendant sought to cross-examine the official reporter of the proceedings before the 1954 and 1955 grand juries concerning such other portions of his testimony before the grand juries. Second, as part of defendant's affirmative defense he made a second offer to introduce the same testimony. In addition, he called Barton Sheela as a witness and sought to show that Mr. Sheela was holding 1954 checks in his hands at the time he questioned defendant before the grand jury. In each instance the trial court sustained an objection of the prosecution and refused to permit the introduction of the testimony.[1]

---

[1]The following testimony of defendant was received before the 1954 grand jury, the portions italicized having subsequently been offered by the People and received in evidence in the present case, and the non-italicized portions having been offered by defendant but rejected by the trial court:

"Q. Did any money in the 1954 campaign go to any efforts to publicize Mr. Bonelli's campaign? A. To my knowledge, not.

"Q. No money was spent on behalf of Mr. Bonelli? A. To my knowledge not—not under this.

"Q. Who was the money spent for in 1954? A. Well, I have a list of these various checks here. If you would like to see them I think I have got them in order.

"Q. Is this Frank Bonelli, is that for Mr. Bonelli's son? A. No, no, Frank Bonelli is an Assemblyman representing the Huntington Park area. He succeeded Joe Holibaugh when Joe died.

"Q. I notice a check to Aldine Printing Company for $253.58, on May 27, 1954. Printing for Candidates—Did the Aldine Printing Company

It is apparent that the excluded evidence would have tended to explain defendant's testimony before the grand juries and to show that he had not testified falsely before them as charged.

The correct rule is that where a defendant is charged with perjury and a reporter reads in evidence portions of a previous record necessary to support the charge, the accused cannot require the State to introduce the entire record on cross-examination, but is limited to the introduction on cross-examination of the record which is pertinent to the portions which have been introduced on direct examination. However, the defendant may, as part of his case in chief, introduce all material and relevant portions of the previous record. (*State v. Archuleta*, 29 N.M. 25 [217 P. 619 [1]]; *cf. Powell* v. *Superior Court*, 48 Cal.2d 704, 709 [312 P.2d 698]; *People* v. *Carter*, 48 Cal.2d 737, 752 [14] [312 P.2d 665].)

Clearly, the failure to permit the introduction of the foregoing evidence was prejudicially erroneous.

*Third: That the trial court committed prejudicial*

do the bulk of the printing—for the National Democratic Club? A. Yes, it did.

"Q. Did you ever instruct anyone to make their checks, the contributors to make their checks payable to the Aldine Printing Co.? A. No, I never did such a thing.

"Q. Never instructed any of the people that were sending in any money? A. No. I never, I never saw anybody—I don't know who contributed except as it appears on what you show me.

"Q. I will ask you to examine a photostat of a check out of the Mexican Village, dated June 7, $25.00, signed by Nancy Forsyth, on the Bank of America, Coronado Branch, and asked if that is your endorsement on the back? A. Yes, that is my endorsement.

"Q. One from Jerry's 99, Coronado, California—endorsed by Bernarea Harris; asked you if that is your signature? A. Yes, it is.

"Q. Bocardo's 800 Club, in the amount of $100; drawn on the Bank of America—5 points Branch—dated June 5, I asked if that is your signature on the back? A. Yes, it is, sir.

"Q. One drawn on Albert Bram, personal check, Coronado Branch. A. Yes, that is my signature.

"Q. *Now none of the monies that were spent by the National Democratic Club paid for any advertising on behalf of William G. Bonelli. A. As far as I know, it was never done—I wrote no check for any such thing.*

"Q. Anyone else authorized to write checks? A. No one else—as far as I know.

"Q. *Any of the printing that was paid for—I notice printing and advertising firms in those checks that you showed me. Any of those paid for advertisements that mention the name William G. Bonelli as a candidate? A. To my knowledge not.*

"Q. *But there were no expenditures by the National Democratic Club, directly or indirectly, made on behalf of Mr. Bonelli's campaign? A. There were none.*"

*error in admitting, over objection, statements made by defendant in the trial of People v. Calhoun, wherein he refused to testify on the grounds set forth in article I, section 13, of the Constitution of the State of California,[2] section 1323 of the Penal Code,[3] and section 2065 of the Code of Civil Procedure.[4]*

This contention is sound. By indictment, Bernard P. Calhoun and others, together with defendant, a named though unindicted coconspirator, were charged with conspiracy to violate section 5002.5 of the Elections Code and pervert and obstruct justice or the due administration of the laws. During the course of that trial, the district attorney subpoenaed defendant and called him as a witness for the prosecution, whereupon the following occurred:

"Q. Would you state your full name, sir? A. My name is Nathan Harris Snyder, sir.

"Q. . . . I refer you to a signature in the lower righthand corner thereof. It appears to be a signature of N. H. Snyder. Is that your signature, sir?

"Mr. Whelan [counsel for Snyder]: If the Court please, Mr. Snyder is under indictment in a case now pending in this court and I wish to advise him that he should refuse to answer that question on the statutory and Constitutional grounds.

"The Court: What are they?

"Mr. Whelan: Well, go ahead, Mr. Snyder. A. Well, upon the advice of my counsel I refuse to answer it upon the ground of Article I, Section 13 of the Constitution of California, Section 1323 of the Penal Code, Section 1324 of the Penal Code, and Section 2065 of the Code of Civil Procedure.

"The Court: I am not familiar with the sections you quoted. What do they provide? A. It is the immunity section. Any answer I give may tend to degrade or incriminate me."

Over objection by defendant, the trial court permitted the

---

[2]Article I, section 13, of the California Constitution reads in part: "No person . . . shall be compelled, in any criminal · case, to be a witness *against himself*."

[3]Section 1323 of the Penal Code reads: "A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief. The failure of the defendant to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by counsel."

[4]Section 2065 of the Code of Civil Procedure reads in part: "A witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for a felony. . . ."

record from the Calhoun case quoted above to be read into the evidence before the jury in order to show consciousness of guilt. In this way evidence of defendant's refusal to answer a question asked him by the district attorney in *People* v. *Calhoun*, on the ground that the answer might tend to incriminate him, was put before the trial jury in the present case.

Thereafter the trial court instructed the jury: "[T]hose accused of crime are competent as witnesses only at their own request and not otherwise. You are therefore not to draw an inference against the Defendant Nathan Harris Snyder because he refused to testify in the case of People versus Calhoun on this ground. However, you are further instructed that failure to testify on the ground that an answer might tend to incriminate may be considered by you in the light of all other proved facts in deciding the question of the defendant Nathan Harris Snyder's guilt or innocence. Whether or not his failure to testify in the case of People versus Calhoun on the ground of self-incrimination shows a consciousness of guilt and the significance to be attached to such a circumstance are matters for your determination."

Defendant had appeared before the jury in *People* v. *Calhoun* in response to a subpoena. He was not there in the position of one who voluntarily appeared. The People contend that the testimony was admissible because (1) it was an admission made by a party in response to an accusatory statement, and (2) defendant's reaction thereto showed a consciousness of guilt.

Neither of these grounds is tenable for the reason that no implication of guilt can be drawn from a defendant's relying on the constitutional guarantees of article I, section 13, of the Constitution of the State of California, section 1323 of the Penal Code, or section 2065 of the Code of Civil Procedure. (See *People* v. *Calhoun, ante,* pp. 137, 147 [323 P.2d 427].) Any statements to the contrary in *People* v. *Kynette,* 15 Cal.2d 731, 749 [11] [104 P.2d 794], and *People* v. *Wayne,* 41 Cal.2d 814, 829 [19] [264 P.2d 547], are overruled. Any contrary statements in *Keller* v. *Key System Transit Lines,* 129 Cal.App.2d 593, 598 [277 P.2d 869], and *People* v. *Graney,* 48 Cal.App. 773 [129 P. 460], are disapproved.

The trial court prejudicially erred in admitting the evidence of defendant's refusal to testify in *People* v. *Calhoun.* Likewise, the instruction quoted above which the trial judge

read to the jury was prejudicially erroneous. The use of evidence of the assertion of the privilege against self-incrimination as an indication of guilt and as support for a verdict is directly contrary to the intent of the constitutional provisions set forth above.

The judgments are reversed.

Gibson, C. J., Carter, J., Traynor, J., and Schauer, J., concurred.