[Crim. No. 8025.    In Bank.    Oct. 29, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. JAY SHARER, Defendant and Appellant.

Gregory S. Stout for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Doris H. Maier, Assistant Attorney General, and Edsel W. Haws, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—Defendant was indicted on a charge of assault with intent to commit murder, and was convicted of the lesser offense of assault by means of force likely to produce great bodily harm. Imposition of judgment and sentence was suspended and defendant was granted probation on condition that he pay a fine and serve a 90-day jail term. He purports to appeal from the judgment of conviction and from the nonappealable order denying his motion for new trial. We treat his appeal as one from the order granting probation.

The sole question presented is whether the trial court committed prejudicial error in admitting (over objection) evidence of the fact that defendant, when questioned by the grand jury, invoked his privilege against self-incrimination. At his trial defendant took the stand and testified in rebuttal to the evidence produced by the prosecution. His testimony was entirely inconsistent with the claim that he had assaulted

the victim. On cross-examination the prosecution offered (and was allowed) to show that when called before the grand jury defendant had been asked whether he had committed the alleged assault and had refused to answer on the ground that the reply might incriminate him. The prosecution contended, and the trial court ruled, that while such evidence was not admissible to prove guilt, it was admissible as impeachment of defendant's testimony given on direct examination.

Originally, the issue involved in this case was argued by the parties solely on the basis of California law. During the course of the appeal, the United States Supreme Court rendered two opinions which appeared might be relevant.[1] We thereupon directed the parties to file supplemental briefs on the dual questions: (1) Do the recent decisions of the higher court make unconstitutional the California "comment rule" (Cal. Const., art. I, § 13), and (2) if so, does section 4½ of article VI of that Constitution apply? It now appears that the impact, if any, of the recent federal decisions on the California "comment rule" need not be discussed in this case. This is so because an analysis of California law indicates that admission of the objectionable testimony was error under our law, and a review of the record clearly shows that error to have been prejudicial.

The relevant facts may be stated briefly. The Grand Jury of Tehama County met, in the words of its foreman, "to consider the matter as to Cornie Grootveld in relation to a charge of assault by Jay Sharer in connection therewith." The district attorney produced several witnesses (including

---

[1] *Malloy* v. *Hogan,* 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653], and *Murphy* v. *Waterfront Com.,* 378 U.S. 52 [84 S.Ct. 1594, 12 L.Ed.2d 678], each filed on June 15, 1964. In *Malloy* the court held that the Fifth Amendment privilege against self-incrimination must be deemed fully applicable to the several states through the Fourteenth Amendment, and on that basis reversed a state judgment of contempt for refusal to answer questions of a referee appointed to investigate gambling activities. To the extent that they had held the Fifth Amendment not binding on the states, *Malloy* disapproved *Adamson* v. *California,* 332 U.S. 46 [67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223]; *Cohen* v. *Hurley,* 366 U.S. 117 [81 S.Ct. 954, 6 L.Ed.2d 156]; and *Twining* v. *New Jersey,* 211 U.S. 78 [29 S.Ct. 14, 53 L.Ed. 97].

*Murphy,* with like reasoning, held that the privilege against self-incrimination was equally applicable to a person who has been immunized from prosecution in the jurisdiction wherein his testimony is sought, so long as that testimony might be used to convict him of a crime in some other jurisdiction.

the alleged victim) whose testimony indicated that Sharer had committed an assault upon Grootveld. As a final witness, the district attorney called Sharer, whom he had caused to be subpenaed. Prior to that hearing, but after his client had been served with the subpena, Sharer's attorney had written to the district attorney objecting to the procedure, and advising that if Sharer were called upon to testify he would refuse to answer all questions (other than as to his identity) on the ground that his answers might tend to incriminate him. Although forewarned that Sharer would claim his constitutional privilege, the prosecutor proceeded to ask several questions, each of which, if answered affirmatively, would have been sufficient to sustain an indictment and subsequent conviction.[2] Upon Sharer's refusal to reply, and without hearing any further witnesses, the grand jury indicted. At the subsequent trial, the prosecution witnesses made out a prima facie case of assault. In rebuttal, Sharer produced witnesses (including himself) who testified that Grootveld committed the assault, and that Sharer was the victim. As a result, the record contained sufficient evidence, in the absence of error, to sustain a verdict of either guilt or innocence. Sharer now contends that the cross-examination alluded to above constituted error which led the jury to accept the prosecution's testimony rather than his own and that of his witnesses.

Respondent argues, as it did in the trial court, that it was proper to admit evidence of defendant's prior answers before the grand jury for the limited purpose of impeaching defendant's testimony given at trial. It points out that defendant's reliance on the fact that his answers might tend to incriminate him was entirely inconsistent with the facts to which he testified at trial. Respondent cites a line of California authorities which appear to sustain its position. Analysis

---

[2]Such questions were:

"I am going to ask you, Mr. Sharer, whether on the 28th of June, 1962, at about 7:30 in the evening on Tehama Avenue in El Camino, you did not assault one Cornie Grootveld?"

"Did you not, at that place and time, grab Mr. Grootveld by the wrist and also strike him in the ear?"

"Did you also at the same time and place threaten Mr. Grootveld's life, threaten to choke him?"

To each such question, Sharer replied: "I respectfully decline to answer the question upon the grounds that it is the opinion of my attorney and myself the answer might tend to incriminate and degrade me."

of these cases, however, indicates that they no longer are the law in this state.

In *People* v. *Byers,* 5 Cal.2d 676 [55 P.2d 1177], this court approved the use of testimony which the defendant had previously given before the grand jury. But in that case, the evidence was offered as an admission against interest (the defendant not having taken the stand at his trial), and the court specifically limited the use of such evidence to situations wherein the defendant had testified before the inquisitorial body ''at a time when no formal charge is pending and when a defendant is represented by counsel or otherwise is cognizant of his rights.'' (5 Cal.2d 676, 683, citing the earlier cases of *People* v. *Young,* 31 Cal. 563, 564; *People* v. *Sexton,* 132 Cal. 37 [64 P. 107]; and *People* v. *O'Bryan,* 165 Cal. 55 [130 P. 1042].) In *Byers,* the prosecution read into evidence the entire transcript of defendant's testimony before the grand jury, which consisted principally of questions which were fully and voluntarily answered, and the only objections made at trial were to the inclusion of the few isolated questions and answers wherein defendant had availed himself of his constitutional privilege against self-incrimination. Thus, even if *Byers* were not further limited by subsequent decisions of this court, its factual distinctions prevent it from standing as a conclusive authority herein.

Following *Byers* this court decided the case of *People* v. *Kynette,* 15 Cal.2d 731 [104 P.2d 794]. This is the authority on which respondent and the trial court place their greatest reliance. In that decision the court held it was proper to put into evidence, for the limited purpose of impeachment, the fact that defendants had asserted their constitutional privilege against self-incrimination before the grand jury. The basis of such impeachment was, as here, the inconsistency between a claim before the grand jury that answers might tend to incriminate and the assertion of innocence at the time of trial. The decision was predicated both upon the cases which preceded it, and upon the ''comment rule'' which had, by then, been adopted as section 13 of article I of the California Constitution.

Twelve years after *Kynette,* a somewhat similar issue was raised in *People* v. *Talle,* 111 Cal.App.2d 650 [245 P.2d 633]. Here there was no use made of testimony previously given before the grand jury, but the district attorney attempted to call the defendant as the prosecution's first witness. When defendant refused to take the stand, the district

attorney was allowed to argue that fact to the former's detriment. Acknowledging that the constitutional provision authorizes comment on a defendant's failure to take the stand, the *Talle* opinion held the comment there involved was improper for the reason that it exceeded the intent and purpose of the "comment rule." The prosecution, having attempted to cross-examine Talle before it had made out a prima facie case against him, was in no position to urge to the jury that there was any meaning in the latter's failure to explain or rebut the evidence against him. This portion of the *Talle* opinion is not here relevant. The significant point in *Talle* for present purposes is that the appellate court "found" a statute (Stats. 1871-1872, ch. 243, p. 319) which, apparently, had been overlooked for many years. That statute provided that neither a defendant in a criminal trial nor *a person accused of crime which a grand jury is investigating* shall be a competent witness unless at his own request.[3] On the authority of that statute, *Talle* held that since the prosecutor was unable to make defendant a competent witness his attempt to so do and later his comment on defendant's refusal constituted misconduct.

Less than a year after *Talle* this court decided *People v. Wayne*, 41 Cal.2d 814 [264 P.2d 547]. On the authority of *Kynette*, it held that evidence of defendant's prior invocation of his privilege against self-incrimination was admissible to impeach his testimony voluntarily given at trial. But the *Wayne* opinion did not mention either *Talle* or the statute on which the latter was predicated. Apparently the attention of the court was not called to them.

In *People v. Walsh*, 47 Cal.2d 36 [301 P.2d 247], the court again held that, for the purpose of impeaching defendant's testimony, the prosecution could introduce evidence of defendant's prior refusal to testify before the grand jury on the ground that his answers might tend to incriminate him. *Walsh*, as did *Wayne*, relied entirely on *Kynette* (and certain appellate court cases which had followed the latter), and made no mention of either *Talle* or the statute.

---

[3]Since enacted into the Penal Code (1953) as section 1323.5, the statute now reads, in part:

"In the trial of or examination upon all indictments, complaints, and other proceedings before any court, magistrate, grand jury, or other tribunal, against persons accused or charged with the commission of crimes or offenses, the person accused or charged shall, at his own request, but not otherwise, be deemed a competent witness."

The following year, the court had similar issues presented in *People* v. *Calhoun,* 50 Cal.2d 137 [323 P.2d 427], and in *People* v. *Snyder,* 50 Cal.2d 190 [324 P.2d 1]. By then the "lost" statute had been reenacted into the Penal Code. (See fn. 3, *supra.*) In *Calhoun,* defendant had previously appeared before the grand jury in response to a subpena, and the prosecution was allowed to show that he had there refused to answer several questions on the ground that his answers might tend to incriminate him. This court reversed, holding first that the situation differed from both *Byers* and *Walsh* in that the defendant appeared before the grand jury in answer to subpena (as here), and not voluntarily (or at the mere request of that body). It pointed out that since the evidence was admitted prior to the defendant having taken the stand, it could only serve as an admission against interest (as contrary to impeachment), and held such to be improper for the reason that "no implication of guilt can be drawn from a defendant's relying on the constitutional guarantee of the fifth amendment to the Constitution of the United States, article I, section 13, of the Constitution of the State of California, or Penal Code, sections 688, 1323, and 1323.5." (*People* v. *Calhoun, supra,* 50 Cal.2d at p. 147, citing authorities, including *Talle.*) While not directly holding that similar evidence would be inadmissible if offered for the purpose of impeachment after defendant testified, *Calhoun* specifically pointed out that section 1323.5 operated to make defendant an incompetent witness before the grand jury, and hence his answers given to that body could not be used subsequently to create an implication of guilt. At the same time, it overruled any inferences to the contrary in *Byers.*

*Snyder* differed from *Calhoun* only in that the prior reliance on the privilege against self-incrimination occurred at the separate trial of an alleged conspirator to which defendant had been subpenaed and called to the stand as a prosecution witness. Again the court reversed on the ground that "no implication of guilt can be drawn from a defendant's relying on the constitutional guarantees . . ." (*People* v. *Snyder, supra,* 50 Cal.2d at p. 197), but on this occasion the opinion overruled any statements to the contrary in both *Kynette* and *Wayne,* as well as in several District Court of Appeal cases which had cited them. While it did not specifically hold similar evidence to be inadmissible for the limited purpose of impeachment, the court said, at page 198: "The use of evi-

dence of the assertion of the privilege against self-incrimination as an indication of guilt *and as support for a verdict* is directly contrary to the intent of the constitutional provisions set forth.'' (Italics added.) The italicized phrase would have been entirely unnecessary if the court had not believed that reliance upon a constitutional privilege by one who is accused of crime and involuntarily called before any tribunal investigating the same, renders his testimony forever incompetent to support a verdict against him. If so, such evidence is as equally incompetent to impeach as it is to indicate guilt.

The entire line of cases relied upon by respondent indicates that those which authorized the use of the objectionable evidence for the limited purpose of impeachment did so either prior to rediscovery of the ''lost'' statute, or in reliance on the authority of those decisions which preceded the rediscovery. The statute, as reenacted, makes a person accused of crime (and who does not volunteer to testify) an incompetent witness. His answers to questions directed to him under such circumstances (whether he answers in full or refuses on constitutional grounds) are incompetent testimony. To allow its subsequent use in a criminal trial in which he is the defendant would be to defeat the purpose of the legislation.

■ From the foregoing it appears that there are several reasons why the admission of the evidence was erroneous, all without reaching the question of the impact of the recent federal cases on the California ''comment rule.'' In the first place, it is questionable whether the prosecutor here acted in good faith, in offering the objectionable evidence solely as impeachment of defendant's testimony given at trial. He had been advised in advance that defendant objected to being called before the grand jury which was (by its own record) convened to investigate and act on a criminal accusation against defendant. He was further advised in advance that all questions other than the witness' identity would be answered with a claim of the constitutional privilege. In spite thereof, and in derogation of the statute, he insisted on calling defendant to the stand and asking him (before the grand jury) questions designed to call for an admission or denial of guilt. If answers to such were refused on the ground of self-incrimination, the testimony at trial would necessarily be inconsistent. If answers were refused without statement of the privilege, that fact would be alleged as an adoptive admission. If the questions were answered, attempt would be made to use the answers to convict. Thus, the dis-

trict attorney was knowingly placing the accused in a dilemma not contemplated by the law. Such procedure is suspect as a calculated trap whereby the prosecution could force the accused to incriminate himself by the very refusal to so do. Most important, however, was the impact of the evidence upon the jury. Even though it was admitted for the limited purpose of impeachment, it became impossible for the jury to separate the "impeaching" nature of the evidence from the inference that defendant refused to answer because he was guilty. If the evidence did, in fact, impeach the testimony given at trial, it was only because defendant was guilty as charged. One fact could not be true independently of the other. Such was more than mere impeachment. It was an attempt to produce indirect evidence of guilt. Viewed in that light, the evidence was not limited to impeachment, but constituted an implication of guilt, and so was inadmissible under all of the cases cited by respondent.

It should also be mentioned that the grand jury subpena served on defendant did not authorize his attorney to accompany him. Under the rule of *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], the introduction into evidence of a confession after interrogation of a person accused of a crime in the absence of his attorney (at least where he has requested the presence of the latter) constitutes prejudicial denial of his constitutional privileges. While defendant here did not specifically demand the presence of his attorney before the grand jury, his counsel's letter to the district attorney was tantamount to such a demand.

At oral argument the Attorney General attempted to avoid both the doctrine of *Escobedo* and the application of section 1323.5 of the Penal Code on the ground that the defendant (although subpenaed before the grand jury, and present without counsel) was admonished by the foreman that he need not testify. Respondent suggests that from such fact we draw an inference that the accused testified voluntarily when he stated the ground of his refusal to answer the questions put to him. Such suggestion ignores the facts that: (a) defendant was subpenaed before the grand jury; (b) before those proceedings commenced the district attorney was advised that defendant would allow himself to be sworn, and further advised of the precise language in which every question put by him would be answered; (c) the so-called "admonishment" was put to defendant in the absence of his counsel, and he had no alternative but to proceed in accord-

ance with the advice previously given to him. All of this the district attorney knew in advance. Under such circumstances defendant's claim of privilege was not voluntary.

■ Considering all of the facts, the most compelling reason for holding that evidence of defendant's examination before the grand jury was improperly admitted at his trial is that, as shown above, he was an incompetent witness *ab initio*. No authority that has been called to our attention holds that incompetent evidence may be made admissible as direct evidence or as evidence of impeachment.

■ There can be no question but that the error was prejudicial. The testimony produced by the protagonists was in direct conflict on all basic issues. The problem was simply one of credibility. The jury could have accepted the story presented by either side. It is obvious that the evidence of defendant's refusal to answer as to his guilt on the ground that such answer might tend to incriminate him had a real effect on the credibility of defendant, and therefore on the merits of the case.

The attempted appeals from the nonexistent judgment of conviction and from the order denying the motion for new trial are dismissed. The order granting probation is reversed, and the cause remanded for further proceedings consistent with this opinion.

Traynor, C. J., Tobriner, J., Peek, J., and Dooling, J.,* concurred.

McComb, J., and Schauer, J.,* concurred in the judgment.

---

*Retired Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.