OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

| | |
|---|---|
| OPINION : | |
| : | No. 88-703 |
| of : | |
| : | AUGUST 3, 1989 |
| JOHN K. VAN DE KAMP : | |
| Attorney General : | |
| : | |
| JACK R. WINKLER : | |
| Assistant Attorney General : | |
| RONALD M. WEISKOPF, Deputy : | |

---

THE HONORABLE DENNIS L. MYERS, COUNTY COUNSEL OF THE COUNTY OF MERCED, has requested an opinion on the following questions:

1. May a California county have more than one grand jury at the same time?

2. When does a grand jury end and to what extent may it function after it ends?

3. What information may a grand jury pass on to its successor?

CONCLUSIONS

1. A California County may lawfully have only one grand jury at any one time except as additional grand juries are expressly authorized for the county by statute.

2. A grand jury ends when its successor is impaneled and sworn unless it is sooner discharged by order of the court and it cannot perform any function after it ends.

3. A grand jury may transmit information or evidence acquired during the course of any investigation conducted by it to the succeeding grand jury except any information which relates to a criminal investigation or which could form part or all of the basis for issuance of an indictment.

ANALYSIS

I. Background

A grand jury is a body of the required number of persons returned from the citizens of the county before a court of competent jurisdiction, and sworn to inquire of public offenses

1.                                                                88-703

committed or triable within the county. (§ 888.)[1] The required number is 23 in Los Angeles County and 19 in other counties. (§ 888.2.)

The grand jury developed under the common law.[2] Article 1, section 8 of the 1849 California Constitution provided in part: "No person shall be held to answer for a capital or otherwise infamous [[3]] crime . . . unless on presentment or indictment of a Grand Jury; . . ." The initiation of criminal proceedings by indictment or presentment in the more serious criminal cases was the principal function of the early grand juries. However, it was not their only function. California grand juries have always been authorized to investigate wilful or corrupt misconduct of local public officers and to initiate, by an accusation, court proceedings leading to the removal of the accused officer. (Ch. 119, Stats. 1850, §§ 73-84; see now Gov. Code, § 3060 et seq.)

In addition to their accusatorial functions California grand juries have been given authority to investigate specified matters and to make reports of these investigations. This has become known as the grand jury's civil or "watchdog" function. (See *People* v. *Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 433.) While we will not attempt to catalog all of these watchdog functions they include inquiring into the condition and management of public prisons within the county (§ 919); investigating and reporting on the operations, accounts and records of county officers and special districts in the county (§ 925); examining and reporting on the books and records of any city in the county (§ 925a); investigating and reporting upon the needs of all county officers (§ 928); and examining and reporting on the books and records of redevelopment agencies (§ 933.1). After the Constitution of 1879 authorized the use of informations following examination by a magistrate as an alternative to a grand jury indictment to initiate criminal prosecutions and the decision in *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, requiring an examination by a magistrate following an indictment by the grand jury the use of indictments has diminished and the civil investigation and reporting role has become the principal function of modern California grand juries.

Under the Constitution of 1849, as amended in 1862, trial jurisdiction of criminal cases was vested in the district courts, the county courts and in the justices' courts. Jurisdiction of the justices' courts was limited to misdemeanors punishable by fine not exceeding $500 or imprisonment not exceeding 6 months or both. The county court had jurisdiction to try all indictments for public offenses except for treason and homicide. Indictment for treason, murder and manslaughter were tried in the district courts. (See ch. 260, Stats. 1863.) All crimes in the district courts and in the county courts had to be prosecuted by indictment. (See ch. 130, Stats. 1863, § 5.) Misdemeanors prosecuted in the justices' courts were tried on the complaint without any indictment. (See ch. 29, Stats. 1851, § 608 et seq.) Thus before 1879 all crimes, except those tried in the justices' courts, had to be examined by the grand jury before the defendant could be tried.

Under the 1849 Constitution the business of the district courts and the county courts was conducted during periods of time called "terms" which were fixed by statute. There were several terms of court each year which commenced on the first Monday of specified months and continued until the business of the court was completed or until the commencement of the next term. Section 241 of the Penal Code adopted in 1872 provided:

---

[1]Section references are to the Penal Code unless otherwise indicated.

[2]*Fitts* v. *Superior Court* (1936) 6 Cal.2d 230, 240; Kennedy & Briggs, *Historical and Legal Aspects of the California Grand Jury System* (1955) 43 Cal.L.Rev. 251.

[3]All felonies were infamous crimes. *In re Westenberg* (1914) 167 Cal. 309, 319.

"At the opening of each regular term of the county court (unless otherwise directed by the judge), and as often thereafter as to the judge may seem proper, a grand jury may be impaneled."

After the grand jury was sworn and charged by the court a statute provided:

"The grand jury must then retire to a private room and inquire into the offenses cognizable by them. On the completion of the business before them, they must be discharged by the court; but whether the business is completed or not, they are discharged by the final adjournment of the court." (§ 906 of the Pen. Code as adopted in 1872; derived from Stats. 1850, ch. 119, § 216.)

The offenses cognizable by a grand jury were those which were to be tried in the county and district courts. Most criminal cases were commenced (then as now) by a complaint alleging the commission of the crime by the defendant laid before a magistrate, who could issue a warrant for the arrest of the defendant. When the defendant was arrested he was brought before the magistrate who was then required to hold an examination at which evidence of guilt and innocence was presented. If the evidence was not sufficient the defendant was discharged but if the magistrate determined there was sufficient cause to believe the defendant was guilty of the offense he ordered the defendant held to answer the charge. The grand jury would then inquire into the offenses in which defendants had been held to answer by magistrates in the county. A grand jury could initiate a criminal investigation without a prior examination before a magistrate but this was rarely done.

The California Constitution adopted in 1879 changed the provision on indictments and the grand jury to read in article I as follows:

"Sec. 8. Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a Magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law. A Grand Jury shall be drawn and summoned at least once a year in each county."

This provision was the subject of considerable debate in the convention. Those who wanted to abolish the grand jury and substitute the information system compromised with those who wanted to retain the grand jury system by agreeing to a provision which authorized both systems. The requirement that a grand jury be drawn once a year in each county was part of that compromise. [4]

_____

[4]The proceedings of the convention are recorded in the official reports of the Debates and Proceedings of the Constitutional Convention of the State of California, Convened at the City of Sacramento September 28, 1878 by E. B. Willis and P. K. Stockton, Official Stenographers, referred to herein as the "Debates". The Committee on Preamble and Bill of Rights reported out a provision which made little change in the grand jury system. (Debates, p. 231) The provision was referred to the Judiciary Committee. (Debates, pp. 259, 261) The Judiciary Committee recommended a section creating a dual system which was adopted by the convention. The Chairman of the Judiciary Committee made a speech (Debates, pp. 309-311) indicating that while he favored abolition of the grand jury the committee recommended a dual system. He said: "That portion of it which requires that Grand Juries should be summoned in each county once a year, was adopted in deference to the judgment of some gentlemen who seem to think that there was some use in the system, and that it formed a good check upon public officers, and therefore that we should retain the Grand Jury once a year at least." He voiced a number of objections to the grand jury system including its expense,

II. Number of Grand Juries in a County.

Article I, section 23 of the California Constitution provides: "One or more grand juries shall be drawn and summoned at least once a year in each county." This constitutional requirement originated as the second sentence in section 8 of article I of the 1879 Constitution providing: "A grand jury shall be drawn and summoned at least once a year in each county." The provision was amended in 1974 to change the first word from "a" to "one or more." The only other reference to grand juries in the California Constitution is in article I, section 14, providing that felonies shall be prosecuted by "indictment" [of a grand jury] or by information following examination and commitment by a magistrate.

The constitutional requirement is that there be at least one grand jury drawn and summoned each year in each county. Even before the 1974 amendment the constitution did not bar the impaneling of more than one grand jury in a county during a year. The actual number of grand juries and the periods for which they were to serve were matters left to the Legislature. In *Fitts* v. *Superior Court* (1936) 6 Cal.2d 230, 241 the court held that "the [constitutional] convention of 1879, like the convention of 1849, . . . left to the Legislature all questions affecting the grand jury not expressly covered by the Constitution."

Chapter 35, Statutes of 1880, revised many Code of Civil Procedure sections following replacement of the former district and county courts by a superior court in each county under the 1879 Constitution. Section 241 of that code provided for the impaneling of grand juries in part as follows:

"241. Every Superior Court, whenever in the opinion of the Court the public interests may require it, must make and file with the County Clerk of their respective counties an order directing a jury to be drawn, and designating the number which, in case of a grand jury, shall not be less than twenty-five nor more than thirty. In all counties having less than three Superior Judges there shall be one grand jury drawn and impaneled in each year, and in all counties having three or more Superior Judges there shall be two grand juries drawn and impaneled in each year. Such order must designate the time at which the drawing will take place. . . ."

The first sentence of this statute gives the court the discretion to make an order directing the drawing of a grand jury panel "whenever in the opinion of the Court the public interests may require it." However, the second sentence is categorical in its requirement that two grand juries be drawn and impaneled each year in certain counties and that one grand jury be drawn and impaneled in all other counties. Harmonizing these sentences we construe the discretion given the court in the first as limited by the second. This means that the court did not have discretion not to make an order for the drawing of a grand jury during the year as required by the second sentence (and the constitutional requirement). The court's discretion was limited to determining at what time during the year the order was to be made.

This statute was amended by chapter 137, Statutes of 1905, to read in part:

its secrecy, and that it was subject to control by men of influence. The principal objection was the prolonged delay between the commitment of defendants and action by the grand jury particularly in the more populous counties. He said that at one point there were 200 men in the San Francisco jail awaiting action by the grand jury and that cases had been accumulating for months awaiting action by the grand jury in Sacramento.

"241. Every superior court, whenever in the opinion the court the public interest requires it, must make and file with the county clerk, an order directing a jury to be drawn, and designate the number, which, in case of a grand jury, shall not be less than twenty-five nor more than thirty. In all counties there shall be at least one grand jury drawn and impaneled in each year. Such order must designate the time at which the drawing will take place. . . ."

The principal change was in the second sentence. Instead of the categorical requirement for a specified number of grand juries to be drawn each year in each county the 1905 amendment provided that "at least one" grand jury shall be drawn and impaneled in each year in all counties. If the words "at least" are to have any meaning it must be because the legislature contemplated that there would be circumstances when the more that one grand jury should be drawn. Who was to decide if there was to be more than one grand jury for the year? Clearly it was not the legislature because the amendment did away with the prior legislative determination of the number of grand juries to be drawn each year in each county. Who then did the 1905 legislature intend to make that determination? The preceding sentence provides the answer. It directs the court to make an order directing that a grand jury be drawn "whenever in the opinion of the court the public interest requires it." The effect of the amendment of the second sentence to include the words "at least" was to expand the discretion granted to the court by the first sentence to determine whether and when the public interest required the impaneling of more than one grand jury for the year.

This construction does not resolve the question whether two or more grand juries may exist at the same time in the same county.[5] On this point the supreme court's language in *Halsey* v. *Superior Court* (1907) 152 Cal. 71 is instructive. In that case the defendant had been indicted in 1907 by a grand jury impaneled in 1906 and he claimed that said grand jury had expired by operation of law at the end of 1906. The court rejected the claim on other grounds but did state in its opinion (at p. 74) that when in obedience to the requirement that at least one grand jury be impaneled in each year a new grand jury is impaneled, "the life of the former grand jury must necessarily end." While this language is dicta (see *People* v. *Snyder* (1958) 50 Cal.2d 190, 193) it stated the supreme court's view that the law did not authorize more than one grand jury at the same time in a county.

In *People* v. *Snyder, supra*, 50 Cal.2d 190 the defendant made a similar contention. The 1955 grand jury presented its final report on February 6, 1956 but the court ordered it to remain operative until March 5, 1956. The 1956 grand jury was impaneled on February 6, 1956 but the court ordered that the oath not be administered until the tenure of the 1956 grand jury ended. The 1955 grand jury indicted the defendant on March 21, 1956. Thereafter the oath was administered to the 1956 grand jury. The court held that since the 1956 grand jury was not sworn until after return of the indictment the 1955 grand jury had not ceased to be an official body at the time it returned the indictment. The court disagreed with the language in *Halsey* that the life of the former grand jury must necessarily end when a new grand jury is impaneled but only to the extent that it was the oath to the new grand jury that signaled the demise of the former grand jury, not its impanelment. The court in *Snyder* thus reiterated the view of the *Halsey* court that two grand juries would not exist at the same time.

---

[5] In *O'brien* v. *State* (1890) 8 So. 559, the Supreme Court of Alabama held that a statute authorizing the impaneling of a grand jury "whenever the judge of this court shall deem it expedient to do so" did not authorize the judge to organize successively two grand juries, with general powers, at any one term of any court.

Chapter 501, Statute of 1959, moved the provisions of section 241 of the Code of Civil Procedure to the Penal Code. The first sentence became Penal Code section 904 which now reads:

"904. Every superior court, whenever in its opinion the public interest so requires, shall make and file with the county clerk an order directing a grand jury to be drawn. Such order shall designate the number of grand jurors to be drawn, which shall not be less than 29 nor more than 40 in counties having a population exceeding four million and not less than 25 nor more than 30 in other counties.

The second sentence became Penal Code section 905 which reads:

"905. In all counties there shall be at least one grand jury drawn and impaneled in each year."

That no substantive change was intended in 1959 is made clear by section 20 of chapter 501 which reads:

"Sec. 20. In enacting this act, the Legislature intends to recodify the laws relating to grand juries for the purpose of collecting such laws under one title of the Penal Code and of providing a more logical arrangement of such laws. It is not the intent of the Legislature to make any substantive change in the laws affected by this act. The sections of law added or amended by this act insofar as they are substantially the same as existing statutory provisions relating to the same subject matter shall be construed as restatements and continuations and not as new enactments."

In 1970 section 904.5 was added to the Penal Code authorizing a second grand jury for Los Angeles County. Thereafter sections 904.6, 904.7, 904.8 and 904.9 were added authorizing a second grand jury for the counties of San Francisco, San Mateo, Contra Costa and Marin. Each of these new sections makes specific provisions for impaneling a second grand jury to serve simultaneously with the first and prescribes the jurisdiction it is to exercise.

We conclude that a California county may not lawfully have more than one grand jury at any one time except as additional grand juries are expressly authorized for the county by statute.

III. Termination of a Grand Jury.

Penal Code Section 915 provides:

"When the grand jury has been impaneled, sworn, and charged, it shall retire to a private room, except when operating under a finding pursuant to Section 939.1, and inquire into the offenses and matters of civil concern cognizable by it. On the completion of the business before the grand jury or expiration of the term of prescribed service of one or more grand jurors, the court shall discharge it or the affected individual jurors."

In *People* v. *Superior Court (1973 Grand Jury)* (1975) the court observed that "There is no doubt that a grand jury is part of the court by which it is convened, and that it is under the control of the court . . . ." The court then added (at pp. 438-439) "In this regard, it is well established

that the convening court may at any time, in the exercise of its jurisdiction, order the grand jury to be discharged" citing *In re Gannon* (1886) 69 Cal. 541, 547 and Penal Code section 915.

Penal Code section 915 was derived from former Penal Code section 906, enacted in 1872, which read:

"The grand jury must then [after being charged by the court] retire to a private room and inquire into the offenses cognizable by them. On completion of the business before them, they must be discharged by the court; but whether the business is completed or not, they are discharged by the final adjournment of the court."

A grand jury cannot discharge itself and when a grand jury is not impaneled for any particular time prescribed by law and has not been discharged by the court, it still exists as an original body, with power to perform its duties. (*In re Gannon* (1886) 69 Cal. 541, 547.) In that case Gannon was indicted in March, 1886 by a grand jury impaneled in July, 1885 from a list of names placed in the grand jury box in January, 1885. He sought release on habeas corpus claiming that the grand jury had terminated by operation of law and therefore had no authority to indict him. The court rejected his claim stating that "while the statutory law fixes the time within the year for the court to order the selection and return of grand jurors liable to serve in the capacity of a grand jury, and limits the time in which they shall serve for the purpose of the drawing and impanelment of a grand jury, it prescribes no specific time for the drawing of the grand jury, or for its official existence after it has been drawn and impaneled."

In *Halsey* v. *Superior Court* (1907) 152 Cal. 71 the 1906 grand jury indicted Halsey in 1907 and he sought a writ of prohibition to prevent his trial claiming the 1906 grand jury ended by operation of law upon the listing of new names for the grand jury box in 1907. The court rejected the claim reiterating its holding in *Gannon*. In its opinion the court noted the words: "but whether the business is completed or not, they are discharged by the final adjournment of the court" in Penal Code section 906. The court said (p. 74):

"This section was adopted at a time when we had terms of court. As under the constitution of 1879 we now have no such terms of court, and the superior court is always open for business, there is no such thing as a final adjournment of the court, and the quoted portion of the section is no longer effectual."

We pointed out above that in *People* v. *Snyder* (1958) 50 Cal.2d 190 the supreme court rejected the defendant's claim that the 1955 grand jury which indicted him in March, 1956 had no authority to act because it ceased to be an official body when the 1956 grand jury was impaneled in February, 1956. The court rejected the claim pointing out that the court which impaneled the 1956 grand jury had ordered that the oath not be administered until after the tenure of the 1955 grand jury had ended. The court held that since the oath had not been administered to the 1956 grand jury "the 1955 grand jury had not ceased to be a official body at the time it returned the indictment" (p. 193). The clear implication is that a grand jury ceases to exist when its successor is sworn. It would therefore appear that following the *Snyder* case a regularly impaneled grand jury remained in existence until its successor was sworn or the court made an order discharging it.

Chapter 428, Statutes of 1973, added section 905.5 to the Penal Code to read:

"905.5. The grand jury shall be impaneled and serve during the fiscal year of the county."

[This section has since been amended to authorize the board of supervisors to change the period from the county's fiscal year to a calendar year. See chapter 1408, Statutes of 1982 and chapter 344, Statutes of 1984.]

By providing that the grand jury "shall be impaneled and serve during the fiscal year of the county" (or calendar year if the board of supervisors has changed the period) the Legislature's intention that the grand jury should serve for a fixed term commensurate with the fiscal (calendar) year is apparent. However, the Legislature's intention regarding the consequences on the existence and powers of the grand jury when the fiscal (calendar) year ends is not apparent. Does one grand jury automatically cease to exist at midnight on June 30 (December 31) or does it carry over until its successor is impaneled and sworn? May a grand jury which is in the midst of an investigation on June 30 complete that investigation during the next fiscal year? If a grand jury may carry over after the fiscal year may it initiate a new investigation in the following fiscal year? These questions are not answered by the statutes.

In an effort to answer these questions we examined the legislative history of section 905.5. It began as AB 802 in the 1973 Session. As first introduced Section 3 of AB 802 provided: "Any grand jury impaneled on the effective date of this act shall serve until <u>another grand jury is impaneled and sworn pursuant to law.</u>" Section 3 was amended in the Senate on June 28, 1973 to delete the underlined language and substitute the date June 30, 1974. This effectively terminated all grand juries which were impaneled on January 1, 1974, the effective date of AB 802, on June 30, 1974 regardless of the time the successor grand juries were impaneled and sworn. The Legislature, by its amendment of Section 3, evidenced its intention that grand juries impaneled on January 1, 1974 were not to hold over after the end of that fiscal year, June 30, 1974. But Section 3 applied only to grand juries impaneled on January 1, 1974 and says nothing about subsequent grand juries.

When the Legislature directed in section 905.5 that "the grand jury shall be impaneled and serve during the fiscal year of the county" did it mean that the court must swear in the new grand jury immediately after midnight on June 30 and that the grand jury ceased to exist at midnight on June 30? In *Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 the court stated:

"We have held that, generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed."

We believe California courts would hold that the reference to fiscal (calendar) year in section 905.5 is directory rather than mandatory or jurisdictional. This means that the power of the court to impanel or discharge a grand jury is not limited by the fiscal (calendar) year language of the statute, nor is the power of a grand jury to exercise the authority of a grand jury limited to the fiscal (calendar) year. We think the fiscal (calendar) year language in section 905.5 was intended to create a regular annual term for the grand jury in the same way that statutes establish a term for a public office. It was not intended to authorize a grand jury to function until it was sworn by the court or to prevent it from acting after its term was over and before its successor was sworn to take its place.

The Legislature is presumed to have been aware of the Supreme Court's decision in *People* v. *Snyder*, *supra*, recognizing the authority of the court to continue a grand jury in existence to permit it to complete an investigation by delaying the swearing of the successor grand jury. (*Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200.) We don't think that the annual term language of section 905.5 was intended to remove that authority. We also note that in 1974, a year after the enactment of section 905.5, the Legislature amended section 933 to require that grand jury reports on county fiscal matters be filed within three months after the end of the county fiscal year. This

was a recognition by the Legislature that the grand jury remained in existence after June 30, at least for the purpose of preparing and filing reports.

We conclude that a grand jury does not terminate automatically at the end of its regular annual term but carries over until its successor is sworn unless it is previously discharged by order of the court.

We are also asked whether, and to what extent a grand jury could function after it ends. We noted above that in 1974 the Legislature amended section 933 to require reports on county fiscal matters within three months after the end of the fiscal year and reports on other county government matters within one month after the end of the fiscal year. (Stats. 1974, ch. 1396.) This amendment contemplated that a grand jury for a fiscal year would remain in existence for the purpose of preparing and submitting these reports. However, chapter 1297, Statutes of 1988 again amended section 933 by moving up the times grand jury reports must be submitted and by providing that the presiding judgment to whom the reports were submitted must find that the report complies with the law[6] before the report is filed. Subdivisions (a) and (b) of section 933 read:

> "(a) No later than the end of each fiscal or calendar year of a county, each grand jury impaneled during that fiscal or calendar year shall submit to the presiding judge of the superior court a final report of its findings and recommendations that pertain to county government matters other than fiscal matters during the fiscal or calendar year. Final reports on any appropriate subject may be submitted to the presiding judge of the superior court at any time during the term of service of a grand jury. A final report may be submitted for comment to responsible officers, agencies, or departments, including the county board of supervisors, when applicable, upon finding of the presiding judge that the report is in compliance with this title. One copy of each report found to be in compliance with this title shall be placed on file with the county clerk and remain on file in the office of the county clerk.

> "(b) No later than the end of each fiscal or calendar year, each grant jury impaneled during that fiscal or calendar year shall submit to the presiding judge of the superior court a final report of its findings and recommendations that pertain to fiscal matters of county government during the fiscal or calendar year of the county."

These provisions establish time requirements for the submission of grant jury reports to the presiding judge prior to the time the grand jury ends and also provides that the grand jury reports are not "placed on file" with the county clerk or submitted for comment to responsible officers, agencies or departments until a comment to responsible officers, agencies or departments until a "finding of the presiding judge that the report is in compliance with this title [Title 4]" is made. Since section 933(a) and (b) now provide that the final reports shall be submitted to the presiding judge "[n]o later than the end of each fiscal or calendar year" the presiding judge could not find that a final report submitted after the end of the fiscal or calendar year "is in compliance with this title." This finding is a prerequisite to submitting the report to responsible officers and agencies for comment and to its being placed on file in the office of the county clerk. Since final reports may no longer be submitted

_____

[6]The scope of the presiding judge's reviewing role is strictly confined to ensuring that the report does not extend beyond the legal boundaries of the grand jury's broad reportorial power and the judge has no authority to edit a report simply because he or she disagrees with its conclusions or believes that its recommendations were hastily reached or were not justified. (*People* v. *Superior Court of Santa Barbara County* (1975) 13 Cal.3d 430.)

after the fiscal year term of the grand jury ends we conclude that there are no functions which a grand jury may perform after it ends.

IV. Passing Grand Jury Information to Succeeding Grand Jury.

The third question asks what, if any, information a grand jury may pass to its successor. This question is answered by Penal Code section 924.4 which provides as follows:

"Notwithstanding the provisions of Sections 924.1 and 924.2, any grand jury, or if the grand jury is no longer empaneled, the presiding or sole judge of the superior court, may provide the succeeding grand jury with any information or evidence acquired by the grand jury during the course of any investigation conducted by it during its term of service, except any information or evidence which relates to a criminal investigation or which could form part or all of the basis for issuance of an indictment. Transcripts of testimony reported during any session of the grand jury shall be made available to the succeeding grand jury upon its request."

The exception implements section 940 which provides that an indictment cannot be found without the concurrence of at least 12 grand jurors (14 in Los Angeles County with 23 grand jurors). Section 940 has been construed to require that the minimum number of grand jurors concurring in an indictment must have heard all of the evidence presented to the grand jury thereon. (*People* v. *Fujita* (1974) 43 Cal.App.3d 454, 477.)

We conclude that a grand jury may transmit information or evidence acquired during the course of any investigation conducted by it to the succeeding grand jury except any information which relates to a criminal investigation or which could form part or all of the basis for issuance of an indictment.

\* \* \* \* \*