[Crim. No. 404.   Second Appellate District.—July 30, 1915.]

## In the Matter of the Application of JUAN LUERA for a Writ of Habeas Corpus.

MUNICIPAL CORPORATIONS—INVALID LIQUOR ORDINANCE—POSSESSION OF LIQUOR—POLICE POWER.—A municipal ordinance providing that every person having in his possession, within the city, any spirituous, vinous, malt or mixed liquors, or any alcoholic or intoxicating drinks, shall be deemed guilty of a misdemeanor, is not a valid exercise of the police power vested in cities by article XI, section 11, of the constitution.

ID.—POSSESSION WITH INTENT TO DISPOSE OF INTOXICATING LIQUORS.—A city may by ordinance, in the exercise of its police power, make it a misdemeanor for one to have in his possession intoxicating liquors with the intent to dispose of them for the use of others, but it has no power to declare the mere possession of such liquors to be a crime.

APPLICATION originally made to the District Court of Appeal in and for the Second Appellate District for a Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

N. C. Folsom, for Petitioner.

F. N. Steele, for Respondent.

SHAW, J.—Section 3 of an ordinance of the city of Azusa provides that "Every person having in his possession, within the city of Azusa, any spirituous, vinous, malt or mixed liquors, or any alcoholic or intoxicating drinks, shall be deemed guilty of a misdemeanor." Section 16 thereof provides: "The provisions of this ordinance shall not be deemed to apply to the keeping of intoxicating liquors for medicinal or scientific purposes."

On April 20, 1915, a complaint was filed with the recorder of the city of Azusa wherein it was alleged that on said date, "within the city of Azusa, county of Los Angeles, state of California, a misdemeanor was committed by Juan Luera, who at the time and place last aforesaid did willfully and unlawfully have in his possession, within the city of Azusa, spirituous, vinous, malt, or mixed liquors and alcoholic and intoxicating drinks, not for medical or scientific purposes"; and as thus accused he was, upon trial, convicted, and in default of payment of a fine of seventy-five dollars imposed as punishment therefor, was sentenced to serve a term of seventy-five days in the city jail of the city of Azusa.

The question involved is whether or not the provision of the ordinance declaring the mere possession of vinous, malt, and alcoholic liquors to constitute a misdemeanor, is a valid exercise of the police power vested in cities by article XI, section 11, of the constitution of the state.

That a city may in the exercise of such power take all proper steps to suppress and prevent the sale or dispensing of such liquors to others, admits of no question. The provision in question, however, makes no reference to petitioner's possession of such liquors with the intent and for the purpose of selling or distributing the same to others; nor is it even alleged that his possession thereof was for his own use

as a beverage. Indeed, for aught that appears to the contrary, the liquor may have been a bottle of rare old wine, priceless by reason of its age and from a vintage preceding Napoleon's time, or alcohol for use in a spirit lamp, or to clean windows, or any other mechanical use. The books abound with authorities interpreting the constitutionality and validity of statutes and ordinances having for their purpose the suppression of the liquor traffic, but our attention is directed to no authority wherein it has ever been held that the *mere possession* of malt, alcoholic, or vinous liquors constitutes a crime. On the other hand, there is abundant authority holding that such attempted legislation is void as being in violation not only of constitutional rights, but of the inherent right of the individual. In *State* v. *Gilman,* 33 W. Va. 146, [6 L. R. A. 847, 10 S. E. 283], quoted with approval by Mr. Black in his work on Intoxicating Liquors, it is said: "The keeping of liquors in his possesison by a person, whether for himself or for another, unless he does so for the illegal sale of it, or for some other improper purpose, can by no possibility injure or affect the health, morals, or safety of the public; and, therefore, the statute prohibiting such keeping in possession is not a legitimate exercise of the police power. It is an abridgement of the privileges and immunities of the citizen without any legal justification, and therefore void." To the same effect is Woollen and Thornton on the Law of Intoxicating Liquors, sections 98 and 99, where it is said: "A legislature has no power to prevent an inhabitant of a state keeping in store intoxicating liquors for others; for such a law is an invasion of the constitutional provision guaranteeing to every person the free use and exercise of his property." See, also: *State* v. *Williams,* 146 N. C. 618, [14 Ann. Cas. 562, 17 L. R. A. (N. S.) 299, 61 S. E. 61]; *Ex parte Brown,* 38 Tex. Cr. 295, [70 Am. St. Rep. 743, 42 S. W. 554]; *Titsworth* v. *State,* 2 Okl. Cr. 268, [101 Pac. 288]; *Commonwealth* v. *Campbell,* 133 Ky. 50, [19 Ann. Cas. 159, 24 L. R. A. (N. S.) 172, 117 S. W. 383]; *Vance* v. *Vandercook Co.,* 170 U. S. 468, [42 L. Ed. 1111, 8 Sup. Ct. Rep. 645.]

These cases constitute authority for the recognized rule that a city may by ordinance, in the exercise of its police power, make it a misdemeanor for one to have in his posses-

sion intoxicating liquors *with the intent* to dispose of them for the use of others. "An attempt," says Mr. Black, "to make it illegal to bring into a county more than one-half gallon of liquors, except for delivery to a druggist for medicinal purposes, is void, because it prevents a citizen from himself using them and thus unduly restricts his right as a citizen to the use of liquor." Respondent has directed our attention to the case of *Town of Selma* v. *Brewer,* 9 Cal App. 70, [98 Pac. 61], which he claims supports the validity of the provision here involved. In that case the appellant in a civil action to recover a penalty was charged with a violation of section 4 of an ordinance of the town of Selma which made it unlawful "for any person, firm, corporation, company, club, or association to have, keep, possess, provide or store any spirituous, malt, vinous, mixed, fermented, distilled, alcoholic or intoxicating liquors in the town of Selma." The court said: "Under said section it will be observed, the mere having, keeping, possession or storing such liquors, without reference to the disposition which may be made of them by the keeper or possessor, is made unlawful. The language of the section is quite sweeping, and even those having the lawful right to keep and store such liquors—for instance, manufacturers thereof—might be said to come within the purview of the provision but for the fact that it may clearly be gathered from the provisions of the ordinance and from the general purpose the measure is manifestly designed to accomplish, that section 4 of the ordinance has reference and application *only to such persons, associations,* etc., as might violate its provisions *with a view of engaging in the retail traffic in the* liquors mentioned in the ordinance." (Italics ours.) It is apparent from the language used that the court assumed that the *possession of the liquors* in question *was with a view of engaging in the retail traffic thereof.* As we read the case, the opinion is an authority in support of petitioner's contention that the provision of the ordinance in question is void. In the North Carolina case it is said: "It is unquestionably true that the legislature may make the mere possession of burglars' tools, counterfeiting outfits, gaming tables, etc., obscene pictures or prints, and probably other articles incapable of any lawful use, indictable. They are essentially injurious to the public welfare, incapable of any use con-

sistent with the public welfare. . . . They are either not the subject of property rights, or are public nuisances.   We find no statute or decision of any court treating vinous, spirituous, or malt liquors within this classification.''   So, as to opium, the mere possession of which may constitute a misdemeanor (*Matter of Yun Quong*, 159 Cal. 509, [Ann. Cas. 1912C, 969, 114 Pac. 835]) ; the reason therefor being that while it contains properties useful medicinally, it is an active poisonous drug that should never be administered, save under the supervision and control of a physician.   Otherwise used, it is universally admitted that it inevitably leads to an insidious and demoralizing vice, destructive of the moral, physical, and mental welfare of one given to its use.   Therefore, the possession of opium, other than for the restricted purpose imposed by law, could be of no value to the possessor, except upon the hypothesis that he intended to make a use of it injurious to himself and the public.   (*Mon Luck* v. *Sears*, 29 Or. 421, [54 Am. St. Rep. 804, 32 L. R. A. 738, 44 Pac. 693].)   Not so, however, with liquors which, like tea or coffee, are chiefly produced for consumption as a beverage, and the temperate use thereof for such purpose, while not universally conceded, is believed by a large part of the people of the country to be unaccompanied by the degrading and baneful results which accompany the use of opium.   It cannot be said the *mere possession* thereof either produces or threatens to produce any harm to the public or to the one having such article in his possession.

The constitution of the United States vests in Congress the power ''to regulate commerce . . . among the several states.'' By virtue of this provision the supreme court of the United States has denied to the states the power to restrict the transportation of liquors from one state to another.   Under these decisions a citizen of Azusa, notwithstanding the ordinance, might have a case of liquor shipped from a foreign state to him at his home.   ''The right,'' says the court in the case of *Vance* v. *Vandercook Co.*, ''arises from the constitution of the United States; it exists wholly independent of the will of either the lawmaking or the executive power of the state; . . . Whether or not it may be exercised depends solely upon the will of the person making the shipment, and cannot be in advance controlled or limited by the action of the state in

any department of its government.'' The right being guaranteed under the constitution of the United States to have wine or beer shipped to him from a foreign state upon the theory that it is interstate commerce, the power to regulate which is vested in Congress alone, it must follow, in the absence of any legislation by Congress restricting such shipment, that such right implies the right to do all things which are necessary to the full exercise and enjoyment thereof. This would include the right to receive the possession of such goods and, in the absence of any unlawful intent to dispose thereof, such possession, notwithstanding the provision of the ordinance, must be deemed the exercise of a legal right. (*Titsworth* v. *State*, 2 Okl. Cr. 268, [101 Pac. 268].) If one thus acquiring possession of the liquor is not subject to the ordinance, it must follow that, however acquired, the possession thereof constitutes no public offense, since such provisions must be uniform in their application and affect all alike.

The writ is granted and the petitioner discharged.

Conrey, P. J., and James, J., concurred.