[Crim. No. 4883.   First Dist., Div. One.   Dec. 20, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LEONARD B.
GLASER, Defendant and Appellant.

Charles R. Garry, under appointment by the District Court of Appeal, Garry, Dreyfus & McTernan, and Donald L. A. Kerson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Michael R. Marron, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J. — Defendant has appealed ''from the judgment . . . entered . . . on the 16th day of October, 1964, and from the whole of said judgment.'' On that day the court revoked probation granted to the defendant April 17, 1964, following his conviction, on March 27, 1964, by verdict of a jury, of possession of marijuana in violation of section 11530 of the Health and Safety Code. Imposition of sentence had been suspended in the order granting probation, and upon revocation of probation he was arraigned for judgment with counsel and sentenced to state prison for the term provided by law.

### Scope of the Appeal

Defendant, except insofar as he questions the constitu-

tionality of the statute he allegedly violated, does not attack the proceedings attendant to the revocation of his probation and his subsequent sentencing. He seeks to raise errors which allegedly occurred at the trial resulting in his conviction. Any review of the matters giving rise to his conviction and the ensuing order granting him probation is limited by his failure to perfect a timely appeal therefrom. (Pen. Code, § 1237, subd. 1; Cal. Rules of Court, rule 31a; *People* v. *Wilkins* (1959) 169 Cal.App.2d 27, 32-34 [386 P.2d 540]; *People* v. *Walker* (1963) 215 Cal.App.2d 609, 611 [30 Cal.Rptr. 440]; and see *People* v. *Hinkley* (1963) 223 Cal.App.2d 471, 472-473 [36 Cal.Rptr. 5]; and *People* v. *Booth* (1962) 210 Cal.App.2d 443, 447-448 [26 Cal.Rptr. 717].)

Since 1951 Penal Code section 1237, subdivision 1, has provided that "an order granting probation shall be deemed to be a final judgment" from which an appeal may be taken by the defendant. Prior thereto if imposition of sentence was suspended following a conviction the only immediate review of the proceedings was by review of an order denying a motion for new trial in cases where such motion was made and denied. (See *People* v. *Jones* (1950) 36 Cal.2d 373, 375 [224 P.2d 353]; Witkin, Cal. Criminal Procedure (1963) §§ 647-648, pp. 640-642.)[1]

Where sentence was imposed and execution is suspended, the rule is and has been that the "judgment is appealable, although execution thereof is suspended after judgment is pronounced." (*People* v. *Howerton* (1953) 40 Cal.2d 217, 219 [253 P.2d 8]; *People* v. *Foley* (1953) 118 Cal.App.2d 291, 293 [257 P.2d 452]; *People* v. *Means* (1953) 117 Cal.App. 2d 29, 31 [254 P.2d 585].) Although an appeal may lie from a subsequent order, which revokes probation and places the sentence into effect, the matters arising prior to pronouncement of judgment cannot thereby be reviewed. (*People* v. *Howerton, supra,* at p. 220; *People* v. *Means, supra.*

Appellant quotes from *People* v. *Robinson* (1954) 43 Cal. 2d 143 at page 145 [271 P.2d 872], wherein the 1951 amendment is referred to as a "limited extension of a defendant's

[1]1961 amendments restrict the right to appeal from an order denying a motion for new trial to cases where, following conviction, proceedings are suspended and the defendant is committed for sexual psychopathy, insanity or narcotics addiction, but the right to review the propriety of the order on an appeal authorized by subsection 1 of section 1237 is reserved. (Pen. Code, § 1237, subds. 1, 2; Stats. 1961, chs. 650, § 3, p. 1855 and 850, § 5, p. 2229.)

right to appeal from a theretofore nonappealable order," as the court rejected the contention that a subsequent order revoking probation, where imposition of sentence had been suspended, was "an order made after judgment." (See Pen. Code, § 1237, subd. 3.) The court held that an appeal was proper from the ensuing judgment and that the proceedings leading to, and the order for revocation of probation itself could be reviewed on such appeal. It is nowhere therein suggested that such an appeal reopened review of the matters leading to the conviction and original grant of probation. Similar considerations apply to the statement in *Stephens* v. *Toomey* (1959) 51 Cal.2d 864, at page 871 [338 P.2d 182], wherein, in discussing the civil rights of a person against whom no judgment of conviction or sentence of imprisonment has been pronounced, the opinion recites: "If he should violate its conditions he is subject to a revocation of the order of probation with pronouncement of judgment and sentence to follow. (Pen. Code, § 1203.2.) This judgment is appealable under section 1237 of the Penal Code, and for finality must await the result of any appeal."

In *People* v. *Natividad* (1963) 222 Cal.App.2d 438 [35 Cal.Rptr. 237], the court properly denied a motion to dismiss an appeal from a judgment which was pronounced following revocation of probation two years after defendant's conviction and admission to probation, because he was entitled to a review of the validity of the order revoking probation. The court indicated that it should also review "any irregularities going to the jurisdiction or legality of the proceedings." (P. 440.) It examined and overruled defendant's contentions "that he did not know he was pleading guilty to a felony, but believed that the offense charged against him was a misdemeanor," and "that he was not properly represented by counsel." Insofar as the irregularities referred to by the court are those which could be raised on a postconviction collateral attack despite a failure to appeal, it would appear proper to consider them. Insofar as the irregularities are those for which the law offers and requires a timely review by appeal, there is no merit in delaying the review, or giving the defendant alternative remedies, i.e., either on conviction and granting of probation, or on sentencing if probation is revoked. Any advantage of diminishing the number of appeals which might arise because a defendant would accept the milder punishment of probation without contesting a questionable judgment, is offset by the difficulties of review

and of retrial if error is found long after the offense was committed and the original conviction obtained. Such a rule would also create an arbitrary distinction between the time for appeal between those whose sentence was suspended, and those whose sentencing was suspended.

In *People* v. *McCurdy* (1958) 165 Cal.App.2d 592 [332 P.2d 350], the sole question presented on appeal, from a judgment following revocation of probation, was "whether an information charging an assault with intent to commit murder under Penal Code, section 217, will support a conviction under Penal Code, section 245, on the theory that the crime defined in the latter section is a lesser offense necessarily included within the former as charged." (Pp. 594-595, fns. omitted.) The People contended that review of this question was precluded by defendant's failure to appeal from the order granting probation which had been made earlier following his conviction. The court stated: "Our disposition of appellant's assignment of error on its merits renders it unnecessary for us to consider this latter contention." (P. 598.) The case is neither precedent for the proposition that the appeal from the subsequent judgment permits review of the preconviction proceedings, nor for the principle that a variance between the accusatory pleading and the verdict or finding of guilt is an irregularity which may be raised at any time. (See, however, *In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5]; and *People* v. *Carter* (1965) 233 Cal.App.2d 260, 262-264 [44 Cal.Rptr. 440].)

*People* v. *McCree* (1954) 128 Cal.App.2d 196 [275 P.2d 95], does give some solace to appellant. There defendant appealed from the judgment and from an order denying a new trial. The opinion recites: "Respondent contends that this appeal was taken from the judgment of conviction and from the order denying a new trial, and as there was no judgment entered other than the order granting probation to the appellant, the appeal from the judgment should be dismissed. This contention must be sustained. Orders granting probation are now appealable. (Pen. Code, § 1237.) But here it is apparent, since appellant makes no attack on that order, that she did not intend to appeal therefrom. Hence we cannot construe her notice as such an appeal, as was done in *People* v. *Robinson*, 43 Cal.2d 143 [271 P.2d 872]. Since no judgment was entered there cannot be an appeal therefrom. (*People* v. *Guerrero*, 22 Cal.2d 183, 184 [137 P.2d 21];

*People* v. *McShane,* 126 Cal.App.2d Supp. 845 [272 P.2d 571].) However, the merits of this appeal may be decided on the appeal from the order denying a new trial.'' (128 Cal. App.2d at p. 198.)

From the foregoing the defendant urges that because there is no longer an appeal from an order denying a motion for a new trial, a defendant must be entitled to a review of his conviction on appeal from a subsequent judgment after revocation of probation. Any inference from *McCree* that an appeal from a ''judgment'' will not be countenanced as an appeal from an order granting probation, is inconsistent with the pronouncements of the same judge less than four months later (*People* v. *Camargo* (1955) 130 Cal.App.2d 543, 544-545 [279 P.2d 194]), and prevailing appellate practice. (*People* v. *Vetri* (1960) 178 Cal.App.2d 385, 387 [2 Cal.Rptr. 795]; *People* v. *Easley* (1957) 148 Cal.App.2d 565, 566 [307 P.2d 10]; *People* v. *Goldstein* (1955) 136 Cal.App.2d 778, 793 [289 P.2d 581]; *People* v. *Reed* (1954) 128 Cal.App.2d 499, 502 [275 P.2d 633]; and *People* v. *Silberstein* (1958) 159 Cal.App.2d Supp. 848, 849 [323 P.2d 591].) The foregoing authorities also all recognize that such an appeal, as is authorized by statute, from ''an order granting probation,'' gives rise to a review of all the antecedent proceedings (see Pen. Code, § 1259) because the order ''shall be deemed to be a final judgment,'' and is not limited to a mere examination of the propriety of the order itself.

Defendant's failure to establish that his appeal as a matter of course encompasses a review of all matters leading to his conviction does not relieve this court of the obligation to consider those alleged errors which may be raised at any time because they involve violations of fundamental constitutional rights. ■ ''Fundamental jurisdictional defects, like constitutional defects, do not become irremediable when a judgment of conviction becomes final, even after affirmance on appeal. [Citation.] However, the petitioner must show that the defect so fatally infected the regularity of the trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice.'' (*In re Winchester* (1960) 53 Cal.2d 528, 531-532 [348 P.2d 904].)

### *The Constitutionality of Section 11530 of the Health and Safety Code*

Within the foregoing rule it is necessary to review defendant's claim that the statute under which he was convicted is

unconstitutional. (*In re Dixon* (1953) 41 Cal.2d 756, 762 [264 P.2d 513]; *In re Porterfield* (1946) 28 Cal.2d 91, 99 [168 P.2d 706, 167 A.L.R. 675]; *In re Bell* (1942) 19 Cal.2d 488, 492-495 [122 P.2d 22].)

Defendant, in the brief submitted on his behalf and through a supplemental brief which he personally prepared and filed, asserts that the prohibition on the right to possess marijuana is a violation of a right reserved to the people by amendment IX of the United States Constitution and section 23 of article I of the state Constitution, each of which provides that the constitutional enumeration of rights shall not be construed to deny other rights retained by the People. He alleges that the cultivation of marijuana (cannabis sativa, hemp, or Indian hemp, as so defined in Health & Saf. Code, § 11003) was practiced by George Washington and others prior to the adoption of the Constitution, and therefore cannot subsequently be prohibited. The right to prohibit the manufacture of intoxicating liquors has been upheld against the contention that it is a denial of the "rights, privileges and immunities guaranteed by the Constitution of the United States." (*Mugler* v. *Kansas* (1887) 123 U.S. 623, 675 [8 S.Ct. 273, 31 L.Ed. 205].) The court recognized that "the right of each citizen to manufacture intoxicating liquors for his own use as a beverage . . . does not inhere in citizenship." (P. 662; and see also *Johnson* v. *Board of County Comrs. of Reno County* (1938) 147 Kan. 211, 223 [75 P.2d 849, 857-858].)

■ The constitutionality of California statutes prohibiting the possession of narcotics and dangerous drugs has often been upheld. (*Matter of Yun Quong* (1911) 159 Cal. 508, 511-515 [114 P. 835, Ann.Cas. 1912C 969]; *People* v. *Mistriel* (1952) 110 Cal.App.2d 110, 111-112 [241 P.2d 1050]; *People* v. *Oliver* (1944) 66 Cal.App.2d 431, 434-435 [152 P.2d 329]; and see *People* v. *Hicks* (1963) 222 Cal.App.2d 265, 271-272 [35 Cal.Rptr. 149]; and *People* v. *Shephard* (1959) 169 Cal. App.2d 283, 287 [237 P.2d 214].) Defendant, in his personal argument, alleges that marijuana is harmless, that it may properly be cultivated commercially or as a garden plant, and may be possessed as a medicine or ornamental bush. He asserts that it is therefore as unconstitutional to prohibit its mere possession as it would be to prohibit the mere possession of an intoxicating beverage. (See *Matter of Application of Luera* (1915) 28 Cal.App. 185 [152 P. 738].) This argument was made and rejected in *People* v. *Mistriel, supra,* wherein

the court stated: "As a further argument that section 11500 of the Health and Safety Code is invalid, the appellants assert that marihuana is a beneficial herb and not a narcotic. As above shown, the possession of marihuana is, by statute, a public offense. The Legislature is empowered to enact such a statute. As stated in the *Matter of Yun Quong,* 159 Cal. 508, at page 515 [114 P. 835]: '[T]he validity of legislation which would be necessary or proper under a given state of facts does not depend upon the actual existence of the supposed facts. It is enough if the law-making body may rationally believe such facts to be established.' " (110 Cal. App.2d pp. 111-112.)

■ His further argument that the statute is unconstitutional because it fails to recognize exceptions of legal possession for medicinal, scientific or other proper uses, is foreclosed by the fact that he has not shown himself to be one of the class which he claims may be aggrieved. (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Perry* (1931) 212 Cal. 186, 193 [298 P. 19, 76 A.L.R. 1331]; *People* v. *Steelik* (1921) 187 Cal. 361, 375 [203 P. 78]; *In re Nowak* (1921) 184 Cal. 701, 709-710 [195 P. 402]; *People* v. *Hicks, supra,* 222 Cal.App.2d 265, 270; *Franklin* v. *Peterson* (1948) 87 Cal.App.2d 727, 730 [197 P.2d 788]; and cf. *Fort* v. *Civil Service Com.* (1964) 61 Cal.2d 331, 338-339 [38 Cal.Rptr. 625, 392 P.2d 385].)

### *Right to be Warned of Privilege*
### *Not to Testify*

His contention that the court erred in not advising him of his constitutional rights before permitting him to testify is related to the state and federal constitutional provisions regarding self-incrimination and must be examined to determine whether any fundamental right of defendant which would affect the jurisdiction of the court was violated.

The record reflects that defendant was represented by counsel of his own choice at his preliminary examination; that the same counsel appeared with defendant upon his arraignment in the superior court and moved to dismiss the information under the provisions of section 995 of the Penal Code; that following the denial of that motion his attorneys applied for a writ of prohibition from this court which was denied[2] as was a hearing in the Supreme Court.[3]

---

[2] 1st (Div. 3) Civil 21764—December 30, 1963.

[3] 1st (Div. 3) Civil 21764—January 29, 1964 (Peters, J., for hearing).

Thereupon counsel moved to withdraw from the case. The defendant consented but the court, after interrogating him and recommending that he seek the services of the public defender, continued the matter for four days. At that time the motion of counsel to withdraw was granted, and after a lengthy examination the court also granted defendant's motion to represent himself.

During the course of this examination the court interrogated the defendant concerning his age, education, occupation, familiarity with court proceedings, his cognizance of the nature of the charge and the elements of the offense involved. Defendant stated: "I am fully convinced that I can learn the appropriate law necessary for the defense of this case by the time I go to trial . . . I will consult with outside attorneys . . . I have discussed this [selecting a jury] with an attorney." At the conclusion of this hearing he displayed an awareness of his right to exercise a peremptory challenge to one judge, and the matter was again continued.

In his interrogation of the defendant during the two court sessions mentioned above the trial judge voiced his negative impression as to defendant's emotional qualification to defend himself, and stated that defendant would be at a terrible disadvantage because of his lack of knowledge of the complexities of the pleadings and intricacies of a criminal action. To all of the judge's expressions of his misgivings about permitting the defendant to proceed in propria persona, the defendant gave rational answers and on the whole demonstrated sufficient comprehension to sustain the court's order permitting this course.

At the subsequent hearing it was necessary for the court to advise the defendant that although Code of Civil Procedure section 170.5 was repealed, section 170.6 was added. In this connection the court stated: "But already now, you see, you indicate, or impress me with the fact that possibly you don't have the competency to represent yourself." Later in the day he filed the requisite affidavit and the judge, who had theretofore acted, withdrew upon transferring the case to another department. There the defendant entered his plea of not guilty and the matter was set for trial.

The court in chambers, prior to the impanelment of the jury, advised the defendant of the general procedure which would be followed. The defendant displayed an awareness of the difference between a peremptory challenge and a chal-

lenge for cause; inquired intelligently concerning, and interposed a challenge to the panel because it was restricted to registered voters; and indicated he had no further questions. He did indicate a lack of knowledge that smoking was prohibited during court sessions.

Thereafter he examined the People's expert on *voir dire* and cross-examination; he conducted *voir dire* of the police officer on the search which immediately preceded his actual arrest; and presented to the court a decision of the United States Supreme Court (*Preston* v. *United States* (1964) 376 U.S. 364 [84 S.Ct. 881, 11 L.Ed.2d 777]) which had only just been announced, and other authorities dealing with unlawful search and seizure. He subsequently cross-examined the officer and the doctor who had examined him, and used the transcript of the preliminary examination in the process.

At the conclusion of the People's case the following transpired: "MR. MEEHAN [Plaintiff's Attorney]: People rest. THE COURT: All right. You may proceed, Mr. Glaser. MR. GLASER: My first witness is Mr. Meehan." Mr.. Meehan was excused after a few preliminary questions, and then the record reflects: "MR. GLASER: My next witness is myself. THE COURT: All right. I understand you do not wish to be sworn but you will affirm? MR. GLASER: I will affirm, yes. Leonard B. Glaser, the Defendant, was affirmed as a witness in his own behalf and testified. . . ."

The record fails to show that the trial court at any time advised the defendant that he had the privilege to refuse to testify. (U.S. Const., Amends. V and XIV; *Griffin* v. *California* (1965) 380 U.S. 609, 611 [85 S.Ct. 1229, 14 L.Ed.2d 106]; *Malloy* v. *Hogan* (1964) 378 U.S. 1, 3 and 6 [84 S.Ct. 1489, 12 L.Ed.2d 653]; Cal. Const., art. I, § 13; Pen. Code, §§ 688 and 1323; and cf. Evid. Code, §§ 930-940.) ■ It is established that a defendant cannot be required to testify against himself where he objects on constitutional grounds. (*Ex parte Gould* (1893) 99 Cal. 360, 363 [33 P. 1112, 37 Am.St.Rep. 57, 21 L.R.A. 751]; *Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146, 149 [314 P.2d 164]; *In re Ferguson* (1954) 123 Cal.App.2d 799, 801 [268 P.2d 71]; *People* v. *Talle* (1952) 111 Cal.App.2d 650, 661-668 [245 P.2d 633].) ■ Where the accused is not represented by counsel the trial judge has a duty to inform the accused of his constitutional right not to testify, and the fact the accused voluntarily takes the stand does not constitute a waiver of the privilege. (*People* v. *Kramer* (1964) 227 Cal.App.2d 199, 201-

203 [38 Cal.Rptr. 487]; *Killpatrick* v. *Superior Court, supra,* 153 Cal.App.2d 146, 149-151; and see *People* v. *O'Bryan* (1913) 165 Cal. 55, 60-63 [130 P. 1042]; *People* v. *Barker* (1965) 232 Cal.App.2d 178, 182 [42 Cal.Rptr. 651]; *McCarthy* v. *Superior Court* (1958) 162 Cal.App.2d 755, 757-759 [328 P.2d 819]; *People* v. *Mora* (1953) 120 Cal.App.2d 896, 899-900 [262 P.2d 594].[4])

In *Killpatrick* none of the petitioners had counsel. Each of the accused was called as a witness by the prosecutor and interrogated by him and the judge without advice of his privilege not to testify on the issue of wilful failure to support his dependents. The reviewing court, on *certiorari,* annulled the judgments and indicated that the failure to respect a substantial right of the defendant was a violation of orderly legal procedure which could not be remedied by the provisions of section 4½ of article VI of our state Constitution. (153 Cal.App.2d at p. 151.) In *Kramer,* on direct appeal, the court arrived at the same result where the accused freely took the stand without advice as to his privilege. (227 Cal.App.2d at p. 203.) Neither case discusses the evidence elicited. *McCarthy* and *Mora,* which deal with the failure to advise of the right to counsel at a preliminary hearing, indicate that the statements elicited there cannot be used to support an information predicated thereon (162 Cal. App.2d at pp. 757-759), or to support a conviction (120 Cal. App.2d at pp. 899-900). In *O'Bryan* it was similarly held that statements of the accused, which had been adduced before the grand jury without advice of the privilege against self-incrimination, should not have been introduced in evidence at his trial or have been used to impeach the defendant when he testified. (165 Cal. at pp. 60-63.) In *O'Bryan* the court applied section 4½ of article VI of the Constitution and after examining the tainted declarations found there was no miscarriage of justice because "Every material matter covered by them was shown to the jury by other evidence, which was concededly admissible, and the truth of which was not contradicted." (165 Cal. at p. 67.)

The failure to advise an unrepresented defendant of his privilege not to testify should not be condoned, and it may be assumed herein that *Killpatrick* and *Kramer* establish that

[4]Disapproved on other grounds, *People* v. *Van Eyk* (1961) 56 Cal.2d 471, 477 [15 Cal.Rptr. 150, 364 P.2d 326].

on direct appeal it will be grounds for reversal. (See Note (1961) 79 A.L.R.2d 643.) Here, however, because of defendant's failure to appeal immediately following his conviction the matter is raised as a collateral attack on the judgment. The infringement of the privilege against self-incrimination by permitting erroneous comment on the failure of the defendant to take the stand cannot be raised by collateral attack (*In re Spencer* (1965) 63 Cal.2d 400, 414 [46 Cal. Rptr. 753, 406 P.2d 33]; *In re Gaines* (1965) 63 Cal.2d 234, 237-240 [45 Cal.Rptr. 865, 404 P.2d 473]); and even on direct attack such error will be evaluated to determine whether it contributed to the conviction. (*People* v. *Cotter* (1965) 63 Cal.2d 386, 398 [46 Cal.Rptr. 622, 405 P.2d 862]; *People* v. *Bostick* (1965) 62 Cal.2d 820, 823-827 [44 Cal.Rptr. 649, 402 P.2d 529]; and cf. *People* v. *Sharer* (1964) 61 Cal.2d 869, 872-878 [40 Cal.Rptr. 851, 395 P.2d 899].)

Similar considerations govern the application of the *Escobedo-Dorado* doctrine (*Escobedo* v. *Illinois* (1964) 378 U.S. 478, 490-491 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Dorado* (1965) 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361]), which in part rests on the concept of protecting the privilege against self-incrimination (62 Cal.2d at pp. 352-353). Judgments which were final before the date that the United States Supreme Court rendered the decision in the former case may not be collaterally attacked because the doctrine was violated. (*In re Lopez* (1965) 62 Cal.2d 368, 382 [42 Cal.Rptr. 188, 398 P.2d 380].) A subsequent judgment which is open to attack will only be reversed where the record reflects prejudice to the defendant because the improperly elicited and used statement constitutes a confession, or, if not a confession, is of such a nature that its use caused prejudice to the defendant under the provisions of section 4½ of article VI of the California Constitution. (*People* v. *Mathis* (1965) 63 Cal.2d 416, 432-434 [46 Cal.Rptr. 785, 406 P.2d 65]; *People* v. *Hillery* (1965) 62 Cal.2d 692, 712-713 [44 Cal.Rptr. 30, 401 P.2d 382].) Finally, it is noted that the failure to appeal precludes attack on the grounds that evidence was improperly received. (*In re Sterling* (1965) 63 Cal.2d 486, 487-488 [47 Cal.Rptr. 205, 407 P.2d 5], and cases set forth *infra*.)

From the foregoing it is concluded that the mere failure to advise the defendant who volunteers to testify of his right to

refrain from so doing cannot be ground for collateral attack on the judgment. The state and federal Constitutions expressly provide that no person shall be compelled to be a witness against himself in any criminal proceeding. A distinction may and should be drawn between a violation of this right, as in *Gould, Killpatrick, Ferguson* and *Talle, supra,* and a violation of a rule of procedure which requires notice to the defendant so as to protect and implement the right. (See *Kramer* and *Killpatrick, supra.*) In *In re Martinez* (1959) 52 Cal.2d 808 [345 P.2d 449], the petitioner contended that his conviction was obtained in violation of his constitutional right to counsel. The record reflected that he had appeared with counsel, entered a plea of not guilty, and the matter was regularly set for trial. Before the trial he "appeared in court without counsel, stated his willingness to proceed without counsel, withdrew his plea of not guilty, entered a plea of guilty, admitted that he was armed with a deadly weapon at the time of the offenses, waived a presentence report, waived time for sentencing, and agreed that he had no legal excuse to offer why judgment should not be pronounced against him according to law. The court accepted the deputy district attorney's recommendation that the sentences run concurrently and pronounced judgment accordingly." (P. 811.) The opinion (Traynor, J., now C.J.) considers first the question of whether or not his right to counsel had been violated. It finds, in accordance with a referee's report, that the defendant "understood and freely waived his right to counsel on the date he pleaded guilty," and concludes, "Accordingly, the judgment based thereon cannot be set aside on the ground that Martinez was deprived of his constitutional right to counsel. The only question remaining, therefore, is whether the violation of certain statutory provisions compels vacating the judgment." (Pp. 812-813.) The author then discusses the violation of the provisions of sections 284 and 285 of the Code of Civil Procedure, which establish the procedure for change of attorney and require that the attorney of record be recognized until so changed; the violation of provisions of section 1018 of the Penal Code which require that the court "first fully inform him of his right to counsel" before receiving from a defendant who does not appear with counsel a plea of guilty to a felony charge; and the violation of the provisions of the same section which require the court in such circumstances to

expressly find that "defendant understands his right to counsel and fully waives it." (Pp. 813-814.) In respect of these issues, the opinion recites: "We have concluded, however, that since these procedural errors did not result in any deprivation of the constitutional right to counsel, they do not compel vacating the judgment. The only relevant purpose of section 1018 of the Penal Code and sections 284 and 285 of the Code of Civil Procedure is to secure the right to representation by counsel. [Citations.] When that right has been freely and intelligently waived, the defendant has not been deprived of any right that the statutes are designed to secure. Vacation of the judgment on habeas corpus under these circumstances would serve only as an admonition to trial courts in other cases. That is not a proper function of the writ. [Citations.] It must be presumed that trial courts will ordinarily insist on compliance with these statutory provisions and thereby discourage groundless collateral attacks on final judgments of conviction." (Pp. 814-815; cf. Peters, J., dissenting, pp. 817-819.)

So, in the instant case, the judgment should not be vacated for mere failure of the court to give the admonition required by *Kramer* unless it appears that the defendant was in fact compelled to be a witness against himself. An examination of the record fails to reflect that defendant's acting as a witness was other than voluntary, or that he was "a witness against himself."

In the first place, on collateral attack the defendant should show affirmatively that he was not aware of his privilege. The matters set forth above indicate that he intended to and he had secured information about the procedure, rules of evidence and substantive law involved, and well may have known of his right to remain silent. The court's remark, "I understand you do not wish to be sworn but you will affirm?" indicates that at some time, not indicated in the record, consideration was given to the matter of the defendant's taking the stand, and it may well be that this exchange of information dehors the record gave an opportunity to test defendant's knowledge of his rights. Unlike *Kramer* the record here does not reflect that the defendant "exhibited an almost complete lack of any knowledge of evidentiary rules or of criminal judicial procedures." (227 Cal.App.2d at p. 203.)

. . The prosecutor and the defendant himself brought out his

familiarity with drugs by the examination of the arresting officer concerning prior occasions on which the defendant had publicly asserted his use of drugs and advocated a change in the existing laws relating to their possession and use. After the defendant took the stand he attempted to lecture on his experiences in connection with advocating reform of the narcotic laws. When halted on this tack, he asked the court, "May I make some statements on my use of drugs?" The court advised him not to and instructed him that it might be detrimental, but defendant plunged ahead. When halted on this course, he testified to his experiences with the cough pills on the night he was arrested. He stated that he had a very hazy recollection of the events leading to his arrest, that a companion had played around with his pockets, and that he was surprised to have been charged with possession of marijuana. On cross-examination he confirmed his past use and knowledge of marijuana, and stated in reference to the cigarette butt in evidence: "I have never seen this cigarette until I got here yesterday and at that time, I wasn't, you know, up until that time I honestly didn't know—maybe I had it on me for all I know. Who knows what is in your pocket. Anything can be in your pocket, so I had no idea."

If it be assumed that the court had properly advised the defendant of his right to refrain from testifying he would have had two choices open. If he refrained from taking the stand he was faced with the uncontradicted evidence that the butt of a marijuana cigarette had been found on his person, and that he was a person who had previously publicly proclaimed that he had used and was familiar with marijuana. It may be inferred that the jury would have followed the uncontradicted evidence and convicted him. His alternative was to take the stand as he did. It is true that he did not aid his case by his recital, in spite of the court's admonition, of his prior use of marijuana and other drugs, but these matters were already before the jury. He did attempt to show that he had no conscious dominion and control over the substance which was extracted from his pocket. Here he gave the jury an issue over which to deliberate, and it is unreasonable to postulate that his case would have been stronger had he refrained from testifying. Under these conditions the warning would have availed naught, even if it be assumed, contrary to his entire approach that he would have refrained from testifying. There is no error demonstrated which justifies collateral attack on the judgment on this score.

## Sufficiency of the Evidence

■ His objection to the sufficiency of the evidence to show that he had knowledgeable possession of the cigarette butt found in his possession, and knowledge of its nature, cannot be raised on collateral attack and should not be reviewed on this appeal. (*In re Dixon, supra,* 41 Cal.2d 756, 760; *In re Lindley* (1947) 29 Cal.2d 709, 723 [177 P.2d 918].)

The prosecution showed possession of a cigarette butt of a size sufficient to permit the arresting officer to observe vegetable matter which resembled marijuana, and sufficiently large to enable the chemist to analyze it as such. *People* v. *Melendez* (1964) 225 Cal.App.2d 67, 71-73 [37 Cal.Rptr. 126] and *People* v. *Aguilar* (1963) 223 Cal.App.2d 119, 123 [35 Cal. Rptr. 516], upon which defendant relies, are not applicable in any event. Defendant's admitted difficulty in evaluating and comprehending what was going on at the time of his arrest and subsequent physical examination, and his equivocal testimony regarding knowledgeable possession merely created a conflict with that evidence which revealed the cigarette butt was found in his pocket, and which of itself is sufficient to sustain the conviction. (*People* v. *Hurst* (1960) 183 Cal.App. 2d 379, 387 [6 Cal.Rptr. 483] and *People* v. *Anders* (1959) 167 Cal.App.2d 65, 69 [333 P.2d 854].)

## Illegal Search and Seizure

■ Defendant complains that the marijuana taken from his possession was obtained by an illegal search and seizure. The authorities are clear "that habeas corpus is not available to challenge the use of evidence obtained by an unconstitutional search and seizure." (*In re Sterling* (1965) 63 Cal.2d 486, 487 [47 Cal.Rptr. 205, 407 P.2d 5]; *In re Shipp* (1965) 62 Cal.2d 547, 550 [43 Cal.Rptr. 3, 399 P.2d 571]; *In re Lessard* (1965) 62 Cal.2d 497, 503-504 [42 Cal.Rptr. 583, 399 P.2d 39]; and see Traynor, J., concurring opinion, *In re Harris* (1961) 56 Cal.2d 879, 880-886 [16 Cal.Rptr. 889, 366 P.2d 305]; *In re Winchester, supra,* 53 Cal.2d 528, 532; *In re Lindley, supra,* 29 Cal.2d 709, 723.) The propriety of this search and seizure has been before the magistrate, the arraigning judge in the trial court, one division of this court, the Supreme Court, and again before the trial judge. It was also open to review by appeal after conviction. At some time there must be a point of no return.

It may be observed as in *Lessard, supra,* "even if petitioner's point were properly before us, we doubt its merit." (62

Cal.2d at p. 504.) The evidence is uncontroverted that his physical condition at the time he was taken into custody was such that the officer was justified in his decision to "take him to the hospital to determine, if I could, what was wrong and obtain some sort of treatment" because "he did appear to be most definitely under the influence of something." The doctor who examined the defendant diagnosed his condition as under the influence of some type of drug, or something to that effect, and wrote on the hospital records: "Drug ingestion . . . ? Narcotic . . . ? Cough medicine." The doctor communicated the foregoing to the officer and expressed the view it was a drug called Dextromethorphan from a cough syrup type of preparation. He advised the officer that the defendant needed supervision in a hospital or jail. The officer searched the defendant and first found a bottle of pills, which apparently contained the drug mentioned by the physician, in his left front pocket, and then found the marijuana cigarette butt in his right front pocket. The officer then arrested the defendant and took him to jail. Appellant claims the search was not made for identification (see *People* v. *Gonzales* (1960) 182 Cal.App.2d 276, 278-280 [5 Cal.Rptr. 920]), or to protect defendant's personal property (*People* v. *Posada* (1961) 198 Cal.App.2d 535, 539-540 [17 Cal.Rptr. 858]), or for diagnosis (*People* v. *Gomez* (1964) 229 Cal.App.2d 781, 782-783 [40 Cal.Rptr. 616]), and that it could not be justified as incident to a lawful arrest. The facts demonstrate that at all times the officer had a right to arrest defendant for a misdemeanor, to wit, violation of subdivision (f) of section 647 of the Penal Code[5] committed in his presence. (Pen. Code, § 836, subd. 1.) The fact that he sought medical confirmation of his own reasonable diagnosis, and in a commendable humanitarian manner sought medical attention for the defendant, does not obliterate the foregoing facts and conclusions. "Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest." (*People* v. *Ingle* (1960) 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577].) Defendant

[5]Penal Code section 647 provides: "Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor: . . . (f) Who is found in any public place under the influence of intoxicating liquor, or any drug, or the combined influence of intoxicating liquor and any drug, in such a condition that he is unable to exercise care for his own safety or the safety of others, or by reason of his being under the influence of intoxicating liquor, or any drug, or the combined influence of intoxicating liquor and any drug, interferes with or obstructs or prevents the free use of any street, sidewalk or other public way."

recognizes that rule, but contends that *Mapp* v. *Ohio* (1960) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933] requires a different result. This argument was rejected in *People* v. *Tyler* (1961) 193 Cal.App.2d 728, 734 [14 Cal.Rptr. 610] and *certiorari* was denied (1961) 370 U.S. 905 [82 S.Ct. 1252, 8 L.Ed.2d 401]. No error is shown.

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1966.