Filed 9/12/24  P. v. Melton CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063552 |
| v. | (Super. Ct. No. C-49015) |
| JAMES ANDREW MELTON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Julian W. Bailey, Judge. Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\* \* \*

In 2020, James Andrew Melton pleaded guilty to committing a 1981 murder. Under the terms of a plea agreement, the trial court suspended the sentence (25 years to life) and imposed probation with various terms and conditions. In 2023, the court revoked Melton's probation, finding true three alleged probation violations (two positive drug tests and the failure to enroll in a drug treatment program). Melton appeals.

Appointed counsel filed an opening brief summarizing the violation of probation (VOP) proceedings, but raising no arguable issues. (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*); *Anders v. California* (1967) 386 U.S. 738 (*Anders*).) Melton filed two supplemental briefs.

In the interest of justice, this court has independently reviewed the record. (See *People v. Freeman* (2021) 61 Cal.App.5th 126, 133–134 [*Wende* review is generally not available following a probation revocation hearing]; but see *People v. Delgadillo* (2022) 14 Cal.5th 216, 230 ["if the appellate court wishes, it may . . . exercise its discretion to conduct its own independent review of the record in the interests of justice"].)

We find no arguable issues. We will briefly address the issues Melton raises in his supplemental briefs and affirm the trial court's order.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In 1981, police found 77-year-old Anthony DeSousa dead in his Newport Beach condominium. DeSousa had been severely beaten about the face and head; one of DeSousa's teeth had been broken. A forensic pathologist opined that the cause of death was ligature strangulation.

In 1982, Johnny Boyd testified against Melton at a preliminary

hearing. Boyd later testified at a trial. The jury convicted Melton of murder, burglary, robbery, and found true two special circumstances. The jury imposed the death penalty. The California Supreme Court affirmed the judgment on direct appeal. In 1992, Boyd died.

In 2007, a federal district court granted habeas corpus relief. The court held Melton was tried while mentally incompetent.

In 2011, Melton was retried on the same charges and special circumstances; however, the People were no longer seeking the death penalty. In a pretrial proceeding, the trial court denied the People's motion to admit Boyd's preliminary hearing testimony. The court declared a mistrial after the jury was unable to reach a unanimous verdict.

In 2014, Melton was again retried, but this time the court admitted Boyd's preliminary hearing testimony. A jury convicted him on the same charges and special circumstances. The court imposed a life sentence without the possibility of parole. This court reversed, finding "Boyd's preliminary hearing testimony was improperly and prejudicially admitted." (*People v Melton* (Oct. 7, 2019, G056217) [nonpub. opn.].)

In 2020, Melton pleaded guilty to DeSousa's murder; the prosecution dismissed the other charges and enhancements. The trial court suspended imposition of sentence (25 years to life), and granted formal probation. The terms included no use of controlled substances, and to: "Cooperate with your probation . . . officer in any plan for psychological, psychiatric, alcohol, and/or drug treatment."

On February 7, 2022, the People filed a VOP petition alleging five violations. The People alleged Melton "provided positive saliva drug tests for amphetamine and methamphetamine on July 22, 2021, August 11, 2021,

3

November 19, 2021, December 27, 2021, and January 28, 2022." The recommendation was that Melton's probation be revoked and reinstated with additional custody time.

On April 4, 2022, Melton admitted the VOP. By agreement of the parties, probation was revoked and reinstated with an additional term of 120 days in the Orange County Jail.

On May 12, 2023, the People filed a second VOP petition. The People alleged that on November 2, 2022, Melton tested positive for amphetamine, and on March 28, 2023, he tested positive for amphetamine and methamphetamine. The People further alleged: "According to the records of the Orange County Day Reporting Center (DRC), the probationer failed to enroll in their program on May 9, 2023." The recommendation was that Melton "be found in violation of probation and probation be revoked, and sentence imposed."

*VOP Hearing*

Starting on October 23, 2023, the trial court presided over a multiday contested VOP hearing. The People called three witnesses. Melton called two witnesses; Melton also testified on his own behalf.

Probation Officer Ramiro Gonzalez testified that he had been assigned to Melton's case for about two years, generally meeting with him every other week. On November 2, 2022, Melton's random drug test returned positive for methamphetamine. Gonzalez advised Melton of the results. Gonzalez held the violation in abeyance, meaning Melton "would not be arrested for that at that point and it can be used for future violations." Gonzalez "decided to work with Mr. Melton and provide a counseling program

4

for him to address his substance abuse issues." Gonzalez referred Melton to an agency used by probation for substance abuse counseling and other services (the DRC). Melton did not report to the DRC, but had rescheduled due to conflicting medical appointments.

Gonzalez testified that on March 28, 2023, Melton tested positive for amphetamine and methamphetamine. Gonzalez advised Melton of the results and again told him he needed to enroll in the DRC. In April and May, Melton had several appointments with the DRC, but he failed to enroll. Melton told Gonzalez that he believed the program would not benefit him, but he said that he would give it a try. Gonzalez said Melton was not employed at this time because he never provided a work schedule. Gonzalez said he saw a letter of intent for employment, but Melton had no start date.

Diego Morales testified that he worked as an assistant case manager in the DRC. Morales did intakes for new participants. Morales spoke to Melton following an orientation in April or May of 2023. A date was picked for Melton to return and sign up. When Melton returned he did not enroll because he said he already had a job. Morales explained that the services being offered were for substance abuse rather than employment, but Melton "just said that he didn't have enough time to come to a program." Morales explained to Melton that the DRC could work with his schedule, but he "got up from the table and said, 'I don't want to do this.'" Morales notified Melton's probation officer. Melton later returned to the DRC. Morales did not do the intake, but he overheard Melton tell someone else, "I don't have time, I don't have time to do this."

Syerra Avalos testified that she worked as a case manager in the DRC. Avalos spoke to Melton in May 2023, after he had been there before.

Avalos began to explain the rules for the program and other intake issues for two or three minutes. Melton said it was not something that he was going to be able to do because of his work. Melton did not sign up for the program. Avalos then had Melton talk to her supervisor, Mr. Ovalle.

Gary Sowards testified he was Melton's attorney in the postconviction federal habeas corpus proceedings. Sowards had maintained contact with Melton. Sowards felt that Melton had promising possibilities of leading a productive and healthy life.

Scarlett Nerad testified that she was a mitigation specialist with a nonprofit in San Francisco that works on capital cases. As part of her work, she had frequent communications with Melton, whom she had offered a job as a trainer. She testified that she attempted to contact Melton's probation officer, but he did not return her messages. Nerad had written a job offer for Melton, which she understood was to be shared with the probation officer.

Melton testified that after he spoke to Miss Avalos at the DRC, he then spoke to Mr. Ovalle. Melton said that he asked if he could come in two days a week, but he was told no, and that he had to commit to the whole program. Melton told Ovalle, "I'm not refusing, but I can't." Melton explained he had medical issues. Orville said he was going to contact the probation officer. Melton said two days later he went to see the probation officer and he was arrested.

The court found by a preponderance of the evidence that the allegations in the petition had been proven. The court said, "It appears to me from the evidence, including your testimony, that you just weren't willing to go along with the entirety of the program. [¶] [Your attorney] emphasized that you were willing at this point to have a substance abuse program, but by

6

your own testimony what you said is you were willing to go in and test two times a week and you didn't think the rest of it was applicable to you. But those aren't the choices of somebody who is on probation. Those are the choices of the court through the actions of the probation officer."

The court said, "I just don't think you're an appropriate candidate to remain on probation from all the evidence I heard. [¶] I would like it to be included in the transcript of this hearing that it's my hope that you are considered for parole in a very expeditious manner. And my hope and expectation is that you'll be able to make it on parole."

After the VOP hearing, Melton filed a notice of appeal. This court appointed counsel, who later filed an opening brief consistent with the procedures outlined in *Wende, supra,* 25 Cal.3d 436. Melton filed a supplemental brief and an amended supplemental brief on his own behalf.

II.

DISCUSSION

When a defendant's appointed appellate counsel identifies no arguable issues on appeal from a postjudgment proceeding, an appellate court may independently review the record for arguable issues. (*Delgadillo, supra*, 14 Cal.5th at p. 230; *Wende, supra*, 25 Cal.3d at pp. 441–442.)

Generally, "an arguable issue on appeal consists of two elements. First, the issue must be one which, in counsel's professional opinion, is meritorious. That is not to say that the contention must necessarily achieve success. Rather, it must have a reasonable potential for success. Second, if successful, the issue must be such that, if resolved favorably to the appellant, the result will either be a reversal or a modification of the judgment." (*People*

7

*v. Johnson* (1981) 123 Cal.App.3d 106, 109.)

If a defendant files a supplemental brief, the "opinion must reflect the contentions and the reasons that they fail." (*People v. Kelly* (2006) 40 Cal.4th 106, 120.) However, a "decision does not require an extended discussion of legal principles. [Citations.] Moreover, a recitation of each of the defendant's assertions will not be necessary in all cases; the purposes of the . . . requirement may in some circumstances be satisfied by a summary description of the contentions made and the reasons they fail." (*Id.* at p. 121.)

Here, we have independently reviewed the record on appeal. We agree with counsel that there are no arguable issues. Thus, we affirm the trial court's order, which revoked Melton's probation and imposed the suspended sentence (25 years to life).

We shall now attempt to briefly summarize and address the major contentions Melton raises in his supplemental briefs.

Melton contends that since the trial court found he was no longer suitable for probation at the 2023 VOP hearing, he should be allowed to withdraw his 2020 guilty plea to the crime of murder.

Generally, a defendant can appeal from an order revoking probation, but other matters "cannot thereby be reviewed." (*People v. Glaser* (1965) 238 Cal.App.2d 819, 821, disapproved on other grounds by *People v. Barnum* (2003) 29 Cal.4th 1210, 1218–1219, fn. 1.) Further, the revocation of a defendant's probation is not a permissible ground for withdrawal of a guilty plea. (See Pen. Code, § 1018; see also *People v. Superior Court* (*Rodas*) (2017) 10 Cal.App.5th 1316 [the six-month time limit for withdrawing a guilty plea after an order granting probation with entry of judgment suspended is mandatory rather than directory].)

Melton contends that the trial court's imposition of the suspended sentence was in violation of the California Racial Justice Act (CRJA).

Under Penal Code section 745, the Legislature's intention was to eliminate racial bias through a variety of challenges that can be raised in criminal proceedings. However, "the Legislature did not include any language indicating a section 745 claim could be presented on direct appeal for the first time." (*People v. Lashon* (2024) 98 Cal.App.5th 804, 812.) In this case, Melton did not raise a challenge under the CRJA in the trial court; therefore, this issue has been forfeited for purposes of appeal.

Melton contends that his counsel at the contested VOP hearing was incompetent for failing to introduce his medical records into evidence and for failing to call Mr. Ovalle from the DRC as a witness.

A defendant has a right to effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 685–686.) However, a review on appeal is generally confined to the record before us. (See *People v. Green* (1979) 95 Cal.App.3d 991, 1001.) Here, the record does not disclose the reasons for counsel's decisions as to what evidence to present at the VOP hearing. Therefore, this appeal is not the proper proceeding for Melton to attempt to establish an ineffective assistance claim. (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 ["claims of ineffective assistance are often more appropriately litigated in a habeas corpus proceeding"].)

Melton contends that given his medical issues, and other factors, there was insufficient evidence at the VOP hearing to support the trial court's finding that he willfully violated the terms of his probation. Melton also suggests that his probation officer may have committed perjury.

In a sufficiency of the evidence review, it is not the role of an

appellate court to reweigh the evidence, nor is it our role on appeal to consider the believability of witnesses. That is, "unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support" the decision of the trial court. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Here, there was arguably some conflicting evidence regarding Melton's failure to enroll in the DRC program. However, there was no conflicting evidence regarding the positive saliva drug tests. But in any event, our role is not to reweigh the evidence, or to judge the credibility of the witnesses at the VOP hearing. In sum, we find that the ruling of the trial court is supported by substantial evidence.

Melton contends that his sentence is disproportionate to the minor nature of the probation violations and therefore the court abused its discretion in imposing the 25 years to life sentence.

Probation is not a right, but an act of clemency that may be withdrawn if the privilege is abused. (*People v. Moran* (2016) 1 Cal.5th 398, 402–403.) Like the granting of probation, revocation rests entirely in the sound discretion of the trial court. Probation may be revoked if there are reasons to believe that a defendant has violated the terms or conditions of probation. While a court has broad discretion to revoke probation, it may not "act arbitrarily or capriciously; its determination must be based on the facts." (*People v. Walker* (1963) 215 Cal.App.2d 609, 612.) Here, it is evident from the record that the court carefully weighed its decision, relied on the facts, and did not act arbitrarily or capriciously in arriving at its ruling. Thus, we find that the court did not abuse its discretion.

## III.

## DISPOSITION

The trial court's order revoking probation and imposing the suspended 25 years to life sentence is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.